Kelly GALLIMORE, Plaintiff-Appellant,

v.

MISSOURI PACIFIC RAILROAD CO.,
Defendant-Appellee.

No. 80–1390
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

Feb. 5, 1981.

Michael D. Cucullu, Bellaire, Tex., for plaintiff-appellant.

Eduardo R. Rodriguez, Brownsville, Tex., for defendant-appellee.

Before GEE, RUBIN and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

Plaintiff-Appellant Kelly Gallimore brings this appeal from a take-nothing judgment in the court below in his suit for damages, brought under the Federal Employers Liability Act (FELA), 45 U.S.C. §§ 51–60 (1976). The first jury to hear the case found that Defendant-Appellee Missouri Pacific Railroad Company (MoPac) was not negligent, but that Gallimore's own negligence was responsible for only 80% of his injuries; it assessed damages at $60,000. The district court believed this to be an inconsistent verdict, and granted a new tri-

al. Upon retrial, a second jury found both parties to be negligent, with each party's negligence assessed at 50% of the total; damages were assessed at $390,000. Gallimore duly moved for judgment based on the second jury verdict. Contrary to the decision of the district judge who presided over the first trial, however, and to its own ruling on an earlier motion by MoPac for reconsideration of the new trial order, the court held that the first jury's findings were not inconsistent. Accordingly, it entered a take-nothing judgment that was based on the first jury's verdict.

Though the record, encompassing two separate trials, is lengthy, the questions presented on appeal are purely procedural. We affirm.

## I. FACTUAL BACKGROUND LEADING TO THIS APPEAL

Gallimore was employed as a brakeman by MoPac on December 22, 1976, at the Brownsville, Texas, railroad yard when he was injured in an accident involving the coupling of two trains. At both trials, the factual issues concerning the accident were contested, as were the source and extent of Gallimore's injuries. There was testimony from expert witnesses for MoPac at both trials to the effect that Gallimore was suffering from spondylolysis—a congenital defect of the back that might have been responsible for some of his damages.

On March 22, 1978, at the close of the first trial, the jury returned its verdict by means of special interrogatories.[1] It found that Gallimore was injured on the date in question, but that MoPac was not negligent in any respect. It further found that Gallimore was negligent, and that his negligence caused or contributed to the injuries he suffered. When asked to express as a percentage the extent to which Gallimore's negligence *contributed to his injuries*, it

[1] The interrogatories and the first jury's answers thereto were as follows:

INTERROGATORY NO. 1
Do you find from a preponderance of the evidence that Kelly Gallimore was injured on December 22, 1976, as he alleges?
The Jury will answer "he was" or "he was not."
We, the Jury answer: He was
If you have answered Interrogatory No. 1 "he was not," then you will not have to answer any further Interrogatories.
If you have answered "he was," then answer the following Interrogatory.
INTERROGATORY NO. 2
Do you find from a preponderance of the evidence that the Missouri Pacific Railroad was negligent in any respect?
The Jury will answer "it was" or "it was not."
We, the Jury answer: It was Not
If you have answered "it was" then answer Interrogatory No. 3.
INTERROGATORY NO. 3
Did the negligence that you found in Interrogatory No. 2 cause or contribute to the injury suffered by the Plaintiff, Kelly Gallimore?
The Jury will answer "it did" or "it did not."
We, the Jury, answer: [no answer]
INTERROGATORY NO. 4
Do you find from a preponderance of the evidence that Plaintiff Kelly Gallimore, was negligent in any respect?
The Jury will answer "he was" or "he was not."
We, the Jury, answer: he was
If you have answered Interrogatory No. 4 "he was" then answer the following Interrogatory.
INTERROGATORY NO. 5
Did the negligence that you found in Interrogatory No. 4 cause or contribute to the injuries suffered by the Plaintiff, Kelly Gallimore?
The Jury will answer "it did" or "it did not."
We, the Jury, answer: It did
If you have answered Interrogatory No. 4 "he was" and Interrogatory No. 5 "it did" then answer the following Interrogatory.
INTERROGATORY NO. 6
To what extent expressed in percentage did Plaintiff's negligence contribute to his injuries?
We, the Jury, answer: 80 %
INTERROGATORY NO. 7
What amount of money if paid now in cash do you find will compensate the Plaintiff Kelly Gallimore for his injuries suffered on December 22, 1976?
We, the Jury, answer: $60,000.00 Dollars.
The verdict was properly signed and dated by the foreman. Although Gallimore's counsel initially requested that the jury be polled, he withdrew that request before the court completed the polling.

answered 80%.[2] Finally, the jury found that $60,000 would fairly compensate Gallimore for the injuries he suffered on December 22, 1976.[3]

Immediately after the verdict was received, the court speculated outside the jury's presence that there might be an inconsistency between the jury's answers to the special interrogatories. Specifically, it noted that while the jury had found that Gallimore's negligence had contributed to only 80% of his injuries, it also found that MoPac was not negligent:

> Well, I don't know whether anybody has ever run into this thing, but I would imagine if the railroad was not negligent there's no way this man can recover, regardless what other answers they have, and I was just thinking out loud. It seems to me there would be a conflict. If they said his negligence contributed 100%, well, it would have been a different story, but there's a little hiatus here of 20%.

Both counsel agreed to brief the question of whether there was a conflict between the jury's findings, and the jury was discharged.

■ Later, Gallimore formally moved for a new trial, or, in the alternative for entry of judgment in his favor in the amount of $60,000; MoPac moved for entry of a take-nothing judgment based on the jury's finding that MoPac was not negligent. On August 26, 1978, the court granted Gallimore's motion for a new trial on the ground that there was an irreconcilable conflict in the jury's answers to the interrogatories:

> It is the opinion of this Court that the Jury's answer to Interrogatory No. 6 [the extent to which Gallimore's negligence contributed to his injuries], when viewed in the light of the instructions given the Jury concerning it in Interrogatory No. 7 [the amount of money damages that would compensate Gallimore for his injuries], obscures the clean line drawn by their finding in Interrogatory No. 2 of no negligence, and consequently presents this Court with a conflict in the Jury's answers.
>
> Accordingly, by Order entered of even date herewith, a new trial will be granted to the Plaintiff.

The court subsequently amended its order upon motion by MoPac to include the requisite certification for an interlocutory appeal under 28 U.S.C. § 1292(b) (1976), but this court, by unpublished order dated October 25, 1978, denied MoPac's petition for permission to bring the interlocutory appeal.[4]

**2.** The court's instruction on this interrogatory was as follows:

> So I have to ask you on three and four [*sic*], regarding his own negligence, whether or not his negligence contributed in whole or in part to the injuries that he now claims he is suffering from this alleged accident.
>
> Now if you should find that Mr. Gallimore was negligent, then you must tell me what percentage of his own negligence contributed to his present injuries. You have to do that by percentage, by finding percentage. So you might say, well, the railroad was seventy-five percent or eighty percent negligent or fifty percent, forty percent, or seventy percent, and that Gallimore was negligent so much. Well, you have to tell me in percentage how much his negligence was. You say the railroad is eighty percent and he's twenty percent, well, put twenty percent in this answer to your question.

**3.** The pertinent part of the court's instruction on the damages interrogatory was as follows:

> Now in question number seven I ask you what amount of money if paid now in cash do you find will compensate the plaintiff, Kelly Gallimore, for his injuries suffered on December 22, 1976, and we, the jury, answer in blank dollars and cents.
>
> Now what are the elements of damage in this case? First I want to tell you that I want you to tell me how much this man has been damaged if you should find that he was damaged. You tell me how much he's been damaged. Don't pay any attention to the percentage if you should find that he was negligent and give me a percentage. Don't take that into consideration because that's my job. If you tell me that this man has been damaged $50,000, and that he was twenty percent negligent, well, I will give him forty. But I will do that. You tell me how much he's been damaged. Don't worry about percentages. I'll take care of that if you should find that he was negligent. You just tell me how much he has been damaged.

**4.** One of the three judges of the panel of this court that denied MoPac's petition under Fed. R.App.P. 5 for leave to bring an interlocutory

On July 11, 1979, as the parties were preparing for the second trial, the case was transferred to a different district judge. MoPac moved the court to reconsider its order granting the new trial and denying MoPac's motion for entry of judgment based on the first jury verdict, and reurged that motion again just prior to the beginning of the second trial; in both instances, however, the motion was denied.

On January 15, 1980, at the conclusion of the second trial, the second jury rendered its verdict, again by special interrogatories. It found that MoPac was negligent and that its negligence was a cause of Gallimore's accident. It also found that Gallimore was negligent and that his negligence was a cause of his accident. When asked to express as a percentage the extent

to which Gallimore's negligence *contributed to the accident*, it answered 50%. Finally, it assessed damages at $390,000. The court discharged the jury, after which counsel for Gallimore moved for entry of judgment based on the second jury's verdict.[5]

Subsequently, MoPac filed a motion that it styled "Motion for Judgment Non Obstanti Verdicto; Alternatively Motion for Remittitur; Alternatively Motion for New Trial Pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure." As one ground for the motion for judgment notwithstanding the verdict, MoPac reurged its argument that judgment should have been entered in its favor based on the first jury's finding that MoPac was not negligent. Gallimore's responding memorandum vigor-

---

appeal under § 1292(b) indicated that, contrary to the decision of the other two judges on the panel, he would have granted the petition.

Gallimore suggested to the district court that our denial of MoPac's petition constituted a decision by this court as to whether there was in fact an inconsistency in the first jury's verdict. That suggestion, to the effect that our denial of the petition somehow constituted the "law of the case," was patently frivolous. The discretion afforded the courts of appeals in reviewing petitions for leave to bring § 1292(b) appeals has been likened to that of the Supreme Court in controlling its certiorari jurisdiction. 16 C. Wright & A. Miller, Federal Practice and Procedure § 3929, at 141 (1977) (citing S.Rep.No. 2434, 85th Cong., 2d Sess. (1958)). This court's denial of such a petition may be for any of a number of reasons largely unrelated to the perceived merits of the order sought to be appealed from, particularly in the context of interlocutory appeals from orders granting new trials. *See id.* § 3930, at 163–64. The district court correctly disregarded this line of argument by Gallimore.

5. After the return of the verdict, the following exchange took place:

MR. CUCULLU [counsel for Gallimore]: If the Court please, the plaintiff would move at this time for the Court to adopt the jury verdict as the verdict of this Court and enter judgment accordingly with the addition of the past medical [expenses] which was stipulated to.

THE COURT: Why don't you prepare a proposed judgment and submit it to counsel and forward it to me, and we will take that matter up.

The court clerk made the following docket entry based on this colloquy:

Proposed judgement [*sic*] to be submitted. Mr. Cuculla [*sic*] moves that the Court enter judgement [*sic*] based on findings by the jury, and that past medical expenses be included—Granted—Jury is excused.

This entry is somewhat ambiguous, and might be read to indicate that the court granted a single motion in which he agreed both that judgment should be entered based on the second jury's verdict, and that past medical expenses should be added to the damage figure awarded by the jury—although such a reading would be contrary to the implication from the portion of the record quoted above.

However, although this entry arguably might comply with Fed.R.Civ.P. 79(a)'s requirement that judgments be entered by the court clerk on the folio assigned to the case, no separate document containing a judgment based on the second jury's verdict was ever entered into the record. Fed.R.Civ.P. 58 requires that "[e]very judgment shall be set forth on a separate document," and the Supreme Court has held that this mechanical requirement—which is so important for purposes of determining when a judgment is effectively entered—is to be strictly observed. *United States v. Indrelunas*, 411 U.S. 216, 93 S.Ct. 1562, 36 L.Ed.2d 202 (1973) (per curiam). There is no indication in the record that the parties waived this requirement. *Cf. Bankers Trust Co. v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978). Therefore, Gallimore's first contention on appeal—that this docket entry constituted the effective entry of a judgment in his favor, and that MoPac's motion for judgment n. o. v., filed on February 6, 1980, was untimely under Fed. R.Civ.P. 50(b)—is meritless, regardless of the proper characterization of that motion or of the court's response thereto.

ously contested all of MoPac's motions and the various grounds therefor, and urged again that judgment should be entered based on the second jury's verdict.

The court, by an unpublished memorandum and order dated March 20, 1980, first denied MoPac's motions for a new trial or a remittitur, holding that there was sufficient evidence to support each of the second jury's findings and that the damages awarded were within the universe of possible awards that were supported by the evidence. It then concluded, however, that in light of this court's decision in *Willard v. The John Hayward*, 577 F.2d 1009 (5th Cir. 1978), "the new trial was improvidently granted" because the first jury's answers to the special interrogatories were not in fact inconsistent. The court therefore held that MoPac's motion for judgment n. o. v., insofar as it was "based upon the verdict in the first trial, should be granted and judgment will be entered for the Defendant that Plaintiff take nothing." The resulting judgment for MoPac was entered by means of a separate document on the same day, and Gallimore brought this appeal.

## II. DID THE COURT ERR IN ENTERING JUDGMENT BASED ON THE FIRST JURY'S VERDICT?

### A. Did the Court Have the Power to Reconsider Its Order Granting a New Trial?

The appellations that attend motions under the Federal Rules of Civil Procedure are many and varied. In this case, for example, it would seem that MoPac's motion after the second trial could variously be described

as a motion for judgment notwithstanding the [second] jury verdict, or as a motion for the court to reconsider its earlier grant of a new trial and instead to enter judgment based on the first jury's verdict. This court is "not bound by the label the district court puts on its action where underlying facts indicate that a different action was in fact intended." *Williamson v. Tucker*, 632 F.2d 579, 587 (5th Cir. 1980). As a conceptual matter, we think it more appropriate to characterize the court below's action as a reconsideration of its earlier order that granted Gallimore a new trial and denied MoPac's motion for entry of a take-nothing judgment based on the first jury's verdict. The court's opinion clearly indicates that there was nothing in the second trial or the second jury's verdict that, standing alone, would justify disregarding that verdict. Rather, the court decided that it had erred in each of its previous rulings (1) that the first jury's verdict was inconsistent, (2) that a new trial should be granted, and (3) that MoPac's motions for judgment based on the first jury's verdict should be denied. This, it seems to us, necessarily must be characterized as the grant of a motion to reconsider, rather than the grant of a judgment n. o. v.[6]

The question remains whether the district court had the *power* to reverse its earlier order granting a new trial. Neither party has cited, and our own research has not revealed, Fifth Circuit precedent on this precise point.[7] Nevertheless, we agree completely with the position taken by the United States Court of Appeals for the Ninth

---

**6.** Having so characterized the district court's action, we need not address Gallimore's argument that the only permissible ground for entry of a judgment notwithstanding the verdict is that there is an absence of substantial evidence to support the verdict.

**7.** *Cf. McDowell v. Celebrezze*, 310 F.2d 43, 44 (5th Cir. 1962) (court could, on its own motion and after notifying counsel, vacate previously entered judgment and enter contrary judgment; "[o]verburdened courts, trial and appellate, should not have to squander precious time and resources ... where the Judge on his own and in time faces up to the error and corrects it by

effective action"); *Villareal v. Braswell Motor Freight Lines, Inc.*, 545 F.2d 978, 979–80 (5th Cir. 1977) (finding no abuse of discretion in district court's denial of motion for reconsideration under Fed.R.Civ.P. 60(b)(1) where losing party essentially disagreed with prior judge's handling of case and sought review by another district judge rather than by court of appeals); *Wansor v. George Hantscho Co.*, 570 F.2d 1202, 1205–07 (5th Cir.), *cert. denied*, 439 U.S. 953, 99 S.Ct. 350, 58 L.Ed.2d 344 (1978) (motion for reconsideration of order denying motion for new trial or judgment n. o. v. did not toll the · running of the time for filing appeal).

Circuit in *Bateman v. Donovan*, 131 F.2d 759, 764 (9th Cir. 1942), and *United States ex rel. Greenhalgh v. F. D. Rich Co.*, 520 F.2d 886, 889 (9th Cir. 1975). That position and its underlying rationale have been eloquently described by Professor Moore:

> There is no sound reason why the court may not reconsider its ruling [granting] a new trial. Since this order has destroyed the finality of the judgment (except where it is conditional to a judgment n. o. v.) and since the order is interlocutory and, therefore, subject to revision by the trial court, the trial court should have the discretionary power to reconsider the order granting a new trial.

6A J. Moore, Federal Practice ¶ 59.13[1], at 59–257 (2d ed. 1979) (footnotes omitted). In a subsequent section, Professor Moore elaborates on this proposition:

> An order for a new trial, except where it is conditional to a judgment n. o. v., destroys the finality of any judgment that has been entered; and an appeal will not lie until a final judgment has been entered following the new trial. This latter principle is subject to the qualification, hereinafter discussed, that the court may vacate its order granting a new trial and reinstate the verdict or judgment.
>
> Since an order granting a new trial is an interlocutory order, the district court has plenary power over it and this power to reconsider, revise, alter or amend the interlocutory order is not subject to the limitations of Rule 59 . . . .
>
> While Rule 59(d) limits the power of the court to grant a new trial on its own initiative to a time not later than 10 days

after entry of judgment, there is nothing within its principles that precludes the court, on its own initiative, from vacating an order granting a new trial. The principles of *Bateman v. Donovan* authorize the court to act on its own initiative, just as on the motion of a party.

*Id.* ¶ 59.13[2], at 59–258 to –259 (footnotes omitted). We hold that the trial court, in the circumstances of this case, could properly reconsider, upon motion or *sua sponte*,[8] its earlier order granting a new trial.[9]

■ Our conclusion is not affected by the fact that the court's decision to enter judgment on the first jury's verdict was in disagreement with the earlier ruling of the district judge who presided over the first trial of the case. It is true, as a matter of judicial comity, that

> where a judge of a United States District Court or a judge assigned to a United States District Court, while a case is on his calendar, renders a decision and makes a judicial order in such case, and thereafter the case is transferred to the calendar of another judge of such District Court, the latter judge should respect and not overrule such decision and order.

*Stevenson v. Four Winds Travel, Inc.*, 462 F.2d 899, 904–05 (5th Cir. 1972) (footnote omitted) (per Phillips, Visiting Circuit Judge). Carried to its extreme, this rule could dictate absurd results: it could, for example, preclude a district court from reaching a just and correct result merely because a case had been transferred to it from the docket of a different district judge, whose earlier rulings may be clearly

---

8. Because it would have been proper for the court to reconsider its earlier order *sua sponte*, we need not decide whether MoPac's styling of its motion after the second trial as one for judgment n. o. v. would have any effect on the propriety of the court's action in response. At any rate, MoPac clearly listed as one of several grounds justifying entry of "judgment n. o. v." the jury's verdict from the first trial.

9. We lament the waste of private and judicial resources that went into the second trial, but the fact that the new trial was actually held before the court reversed its ruling that the first jury's verdict was ambiguous in no way

affects our conclusion that it was proper for the district court to reconsider the order. Obviously, had the district court refused to do so, we would have been compelled by our holding in part II–B, *infra*, to vacate any judgment entered on the second verdict and remand with instructions that judgment be entered on the first; the same regrettable waste of the same resources, or perhaps an even greater waste, would have occurred. This is simply part of the penalty exacted of our system of justice by the rule that in the ordinary course of events, an order granting a new trial is interlocutory and not subject to immediate appeal.

wrong in light of subsequent precedent from a higher court. Fortunately, however, this principle is by no means absolute. Rather, it is no more than a principle of comity; as such, it should give way, if the need should arise, to the interests of justice and economy when those interests would be flouted by rigid adherence to the rule. As Judge Wisdom has said for our court:

> It is certainly proper that, generally, one judge, in coordinate jurisdiction with another judge, should not overrule that other. But, as we read the cases, this matter is essentially one within the sound discretion of a trial judge conducting his court in the interest of furthering the administration of justice.

*United States v. Koenig,* 290 F.2d 166, 172 (5th Cir. 1961) (footnotes omitted), *aff'd sub nom. DiBella v. United States,* 369 U.S. 121, 82 S.Ct. 654, 369 U.S. 121 (1962). *See also Graci v. United States,* 301 F.Supp. 947, 950 (E.D.La.1969), *aff'd,* 456 F.2d 20 (5th Cir. 1971), *cert. denied,* 412 U.S. 928, 93 S.Ct. 2752, 37 L.Ed.2d 155 (1973); *Ward v. Louisiana Wild Life & Fisheries Comm'n,* 224 F.Supp. 252, 255 (E.D.La.1963), *aff'd,* 347 F.2d 234 (5th Cir. 1965). Obviously, if the facts or circumstances have changed significantly in the interim—*e. g.,* because of a better-developed record, or a change or clarification in the applicable law from a higher court—the second judge is not truly overruling the first, and neither is he substituting his own views as to whether the decision of the first judge was correct.

In the case at bar, the Fifth Circuit precedent upon which the court below most heavily relied in reconciling the first jury's verdict—*Willard v. The John Hayward,* 577 F.2d 1009 (5th Cir. 1978)—had not been brought to the attention of the first district judge when he entered the order granting the new trial, presumably since the *Willard* decision was only about three weeks old at the time he first ruled on that motion. Given this factor, we find no abuse of discretion in the court's decision to reconsider the order.

**B. Was the First Jury's Verdict Inconsistent?**

The question remains whether, as a matter of law, the court below was correct in its ultimate decision that the first jury's verdict was not inconsistent. After studying the instructions given to the first jury, the wording of the special interrogatories, and the prior precedent on inconsistent jury verdicts, we agree with the court below that the first jury's verdict was not internally inconsistent.

The applicable law is fairly simple, and was well summarized in *Willard v. The John Hayward, supra:*

> If the jury gives inconsistent answers to special interrogatories, the case must be remanded for a new trial. *Morrison v. Frito-Lay, Inc.,* 546 F.2d 154, 160 (5th Cir. 1977); *Miller v. Royal Netherlands Steamship Co.,* 508 F.2d 1103, 1106 (5th Cir. 1975).
>
> Answers should be considered inconsistent, however, only if there is no way to reconcile them. *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,* 369 U.S. 355, 364, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962); *Griffin v. Matherne,* 471 F.2d 911, 915 (5th Cir. 1973). The test is whether the jury's answers can "be said to represent a logical and probable decision on the relevant issues as submitted." *Id.; Miller, supra,* 508 F.2d at 1106–1107.

577 F.2d at 1011. *Accord, Dallas-Fort Worth Regional Airport Board v. Combustion Equipment Associates, Inc.,* 623 F.2d 1032, 1038 (5th Cir. 1980); *Bourque v. Diamond M. Drilling Co.,* 623 F.2d 351, 353 (5th Cir. 1980); *Guidry v. Kem Manufacturing Co.,* 598 F.2d 402, 406 (5th Cir. 1979), *cert. denied,* 445 U.S. 929, 100 S.Ct. 1318, 63 L.Ed.2d 763 (1980). The last-cited case contains an especially cogent analysis of the benefits and pitfalls of the use of special interrogatories under Fed.R.Civ.P. 49(a).

As a matter preliminary to our review of the instructions and interrogatories submitted to the first jury and their responses thereto, we note that Gallimore has contended in both the district court and this court that the first jury's answer to special

interrogatory 7 constituted a general verdict; indeed, a number of the cases he cites on the topic of conflicting jury verdicts arose in the general verdict context. This contention belies a fundamental misconception by counsel as to the difference between a general verdict accompanied by special interrogatories under Fed.R.Civ.P. 49(b), and one based solely upon special interrogatories pursuant to Fed.R.Civ.P. 49(a).

Interrogatory number 7 asked nothing more and nothing less of the jury than that it determine the amount of money that would fairly compensate Gallimore for his injuries. Neither this nor any other interrogatory could be viewed as asking the jury to "find" for one party or the other, and if for the plaintiff, in a specific amount. Regarding interrogatory number 7 in particular, neither the language of the interrogatory nor the instructions that accompanied it would suggest that the jury necessarily intended that MoPac would have to compensate Gallimore in that amount. Counsel and court made clear, and we have no reason to believe the jury did not understand, the difference between liability and damages. The jury found in answer to interrogatory number 1 that Gallimore was damaged; it placed a value on those damages in answer to interrogatory number 7. In contrast to the interrogatories on causation, interrogatory number 7 was not conditioned on the jury's having answered one or more previous interrogatories in a particular manner; the jury quite properly could have drawn the inference that it should answer this interrogatory regardless of whether it thought that MoPac should compensate Gallimore for his damages. Any inconsistency that there may be in the first jury's verdict does not lie in its answer to interrogatory number 7.

■ Rather, the only arguable conflict is between the jury's answers to interrogatory number 2 on the one hand, and numbers 4, 5, and 6 on the other. In answering those interrogatories, the jury found that MoPac

was in no respect negligent (interrogatory number 2); that Gallimore was himself negligent (interrogatory number 4) and that his negligence caused or contributed to his injuries (interrogatory number 5); but that Gallimore's negligence was responsible for only 80% of his injuries (interrogatory number 6). As the district judge who presided over the first trial pointed out, that leaves a hiatus of 20%. But the critical question is: 20% of what?

The trouble, we think, can be traced to the fact that interrogatory number 6 was not phrased so as to ask the jury precisely the proper question. The comparative negligence provision of the FELA, 45 U.S.C. § 53 (1976), provides that "the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." The Supreme Court early on gave this language its plain meaning that the plaintiff whose own negligence was a cause of his injuries should not recover his full damages, but instead the *proportion* of those damages that bore the same relation to the full amount of damages as the defendant's negligence bore to the entire negligence attributable to both. *Norfolk & Western R. Co. v. Earnest*, 229 U.S. 114, 122, 33 S.Ct. 654, 657, 57 L.Ed. 1096 (1913).

In this case, the first jury was not asked what proportion Gallimore's negligence bore in comparison to the total negligence of both parties; instead, it was straightforwardly and unambiguously asked, by both the court's instructions and the language of interrogatory number 6, to apportion the *total causation* of Gallimore's injuries between his own negligence and all other conceivable causes.[10] As MoPac points out, there was ample testimony in the record to indicate that there were other contributing causes to Gallimore's injuries besides any negligence that was involved in the train accident. Specifically, there was evidence

10. We note that the corresponding interrogatory on retrial was phrased only somewhat more accurately: "To what extent expressed in a percentage did Plaintiff's negligence contribute to the accident?"

that Gallimore suffered from a congenital back problem that could perhaps have been aggravated by the accident; given this testimony, it is not improbable that the jury believed that this preexisting condition was responsible for 20% of Gallimore's injuries.

On analogous facts in *Willard v. The John Hayward, supra,* we found no conflict in a jury verdict which found that the defendant's negligence was not a cause of the plaintiff's injuries, but that the plaintiff's own negligence was responsible for only 75% of his injuries: "[T]he jury could easily have considered that plaintiff's injuries were 25% caused by [a] preexisting knee problem rather than by either of the parties ...." 577 F.2d at 1011. We agree with the court below that under the rationale of *Willard*—and indeed, under simple principles of logic and semantics—there was no inconsistency in the first jury's verdict.[11]

██ The only question remaining is whether the imprecision in interrogatory number 6 would justify disregarding the entire verdict of the first jury. We hold it does not. The failure to determine the proportion of Gallimore's negligence to that of both parties' combined negligence would be significant only if the jury had found both parties negligent. It did not; the

clear implication of its answers is that, as between MoPac and Gallimore, Gallimore was 100% negligent (though such negligence was responsible for only 80% of his total injuries), and MoPac was 0% negligent. A completely different situation would be presented were we asked to review the propriety of diminishing a plaintiff's recovery based on a jury's response to interrogatories phrased as were the ones in this case.[12] Given the circumstances present here, however, any error in interrogatory number 6's form was harmless.

### III. CONCLUSION

The court below acted within its power and did not abuse its discretion in reconsidering the earlier order granting a new trial. It was correct in its conclusion that the first jury's verdict was not inconsistent, and in entering judgment based on that verdict. The judgment of the district court is therefore

AFFIRMED.

---

**11.** By contrast, in *Bourque v. Diamond M. Drilling Co., supra,* 623 F.2d at 353, we reversed and remanded for a new trial based on a jury's inconsistent findings (1) that the defendant was negligent, (2) that the plaintiff's own negligence was 80% responsible for his injuries, and (3) that there were no damages sustained. The conflict arose from the jury's findings that although the plaintiff *had* been injured, his damages were zero. The phrasing of the comparative negligence interrogatory was evidently not an issue in that case. Similarly, in *Guidry v. Kem Manufacturing Co., supra,* 598 F.2d at 405–07, we reversed and remanded for a partial new trial because of conflicting findings that while one defendant was *not* negligent for purposes of liability to the plaintiff, it *was* negligent for purposes of a cross-claim for indemnity between defendants.

**12.** Our response in such a case might well turn on such factors as whether the court's instructions made clear to the jury the nature of their proper inquiry, despite the misleading language of the interrogatory, or whether it was the defendant who submitted the interrogatories to the court in that form, or whether there was a

timely objection to them on the ground that their phrasing was misleading. *See also* Fed.R. Civ.P. 49(a) (court may make finding on omitted issues, or shall be deemed to have done so in accord with its judgment on the special verdict).

In fairness to the district judge who presided over the first trial, we should note that flaws in the phrasing of special interrogatories, or conflicting verdicts arising therefrom, are often not the fault of the court. As we said in *Guidry, supra,*

> [t]rial counsel for either party might have obviated the necessity for this appeal ... had they, before the case went to the jury, directed the court's attention to those issues or assisted the court by more careful attention to the specific questions framed by the court. After the verdict, they could have sought resubmission to the jury. On all of these matters, the trial judge is neither expected nor required to rely only on his own comprehension, thoroughness and prescience.

598 F.2d at 407.