# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 02-2587

_____

| | | |
|---|---|---|
| U.S. Xpress Enterprises, Inc., a Tennessee Corporation; Jarrett Bush, | * * * | |
| Plaintiffs - Appellees, | * * | |
| v. | * * | Appeal from the United States District Court for the Western District of Missouri |
| J.B. Hunt Transport, Inc., an Arkansas Corporation, | * * * * | |
| Defendant - Appellee | * * | |
| XTL Transport, Inc., a Canadian Corporation, | * * * | |
| Defendant - Appellant. | * | |

_____

Submitted: January 13, 2003
Filed: February 21, 2003

_____

Before WOLLMAN and MURPHY, Circuit Judges, and GRITZNER,[1] District Judge.

_____

GRITZNER, District Judge.

_____

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa, sitting by designation.

On this appeal, appellant XTL Transport, Inc., asserts the district court[2] erred (1) in failing to undertake an appropriate <u>Batson</u> analysis of XTL's use of a peremptory strike on a prospective juror and by upholding Jarrett Bush's challenge to XTL's peremptory strike of such prospective juror; (2) in failing to grant XTL's Motion for New Trial after U.S. Express failed to timely produce satellite information about the location of its truck prior to the accident in question; (3) by admitting evidence of two absolved Canadian criminal convictions of XTL driver Jacques Trudel for impeachment of Mr. Trudel's trial testimony; and (4) when it reinstated verdicts in favor of Jarrett Bush and U.S. Express after the court, upon its own motion, set aside such verdicts and ordered a new trial. XTL also asserts that it did not abandon or waive appellate review of the trial court's dismissal of J.B. Hunt by not asserting any specific error on appeal with regard to the trial court's entry of judgment in favor of J.B. Hunt.

This case arose out of an accident that occurred on October 29, 1999, in Missouri. Bruce Smith was operating a tractor-trailer for U.S. Express (USX). He was traveling east on I-70 when he approached slower moving traffic, including an unknown tractor-trailer. As Smith began to overtake the unknown tractor-trailer, which was in the right-hand lane, the unknown vehicle allegedly began to encroach upon the lane occupied by Smith.

Once the unknown vehicle came into Smith's lane, Smith steered off I-70, over a guardrail, and collided with an overpass. Smith did not collide with the unknown vehicle. After colliding with the overpass, Smith's vehicle fell from the overpass, landing on a pickup truck below being driven by Jesse Templeton. Both Smith and Templeton died instantly.

---

[2]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri, Western Division.

USX filed suit seeking compensation for property damage, alleging that either J.B. Hunt or XTL owned and operated the unknown tractor-trailer involved in the accident. Jarrett Bush, the son of Smith, intervened in the case in order to assert a claim for the wrongful death of his father. In addition, Myra Templeton intervened and asserted a claim for the wrongful death of her husband.

The case was tried to a jury beginning on August 13, 2001. A key issue at trial was the identification of the unknown vehicle. The trial concluded on August 22, 2001, with the jury apportioning fault for the accident at 97 percent for XTL and 3 percent for USX. The jury awarded damages in the amount of $1.5-million to the Templeton plaintiffs, $630,000.00 to Jarrett Bush, and $172,000.00 to USX.

The trial court entered judgment in accordance with the jury's findings. The court then dismissed J.B. Hunt from the case and ordered a new trial of the remaining claims in this matter.[3] The court's order for a new trial arose out of the court's refusal to disclose to the jury the existence of a "high-low" agreement between Templeton and XTL.

Before a new trial, the Templetons settled their claims against both XTL and USX. Subsequently, both USX and Jarrett Bush filed a joint motion to reinstate the previous judgment set aside by the court. On February 19, 2002, the trial court reinstated its original judgment. XTL appeals from the judgment entered by the trial court on several grounds.

---

[3]J.B. Hunt was dismissed from the case based on the jury's finding that the unknown vehicle was owned and operated by XTL, and not J.B. Hunt.

## Batson Objection

Counsel for XTL attempted to exercise one of its peremptory strikes to exclude a prospective juror, Lester McRae, from the jury panel. McRae disclosed during voir dire that he was employed as a pharmacy purchasing coordinator at the pharmacy at KU Medical Center. At the time XTL attempted to exercise its peremptory strike, McRae was the only remaining African-American on the jury panel. Counsel for Jarrett Bush, who is an African-American, challenged XTL's attempted strike of McRae, asserting that the strike was improper pursuant to Batson v. Kentucky, 476 U.S. 79 (1986). After conducting a brief conference with counsel for XTL and Bush, the court denied XTL's use of the strike on McRae.

Whether the trial court was in error in disallowing the peremptory strike is an issue this court reviews for clear error. See United States v. Campbell, 270 F.3d 702, 706 (8th Cir. 2001). In Batson v. Kentucky, the Supreme Court adopted a three-part test to be used to determine whether a peremptory strike violates the Equal Protection Clause. Batson v. Kentucky, 476 U.S. 79, 96-98 (1986). First, the opponent of a peremptory challenge must make a prima facie showing that the proponent has exercised the peremptory challenge on the basis of race. Id. at 97. If the requisite showing has been made, the burden then shifts to the proponent to articulate a race-neutral explanation for striking the juror in question. Id. Finally, the trial court must determine whether the opponent has carried the burden of proving purposeful discrimination by the proponent. Id. at 98. The holding in Batson was extended to civil cases in Edmonson. Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614, 628 (1991). Under Edmonson, Bush can assert the excluded person's rights on his behalf. Id. at 628-29.

XTL first claims that Bush failed to make out a prima facie case of discrimination, but we disagree. "A [party] can establish a prima facie Batson case by demonstrating 1) he is a member of a cognizable racial group, 2) the juror is of the

same racial group, and 3) the relevant circumstances of the voir dire support an inference of discriminatory purpose." United States v. Moreno, 217 F.3d 592, 594 (8th Cir. 2000). Bush is African-American, as is McRae, thereby satisfying parts one and two.

We also find that the relevant circumstances of the voir dire support an inference of discriminatory purpose, thereby satisfying part three. In Davidson v. Harris, 30 F.3d 963 (8th Cir. 1994), we noted that where the alleged reason for the strike was because the juror had young children, the strike of a juror appeared suspect given the fact that counsel asked no questions of the juror to verify whether her mere status as a mother of young children engendered sympathy for prisoners. Davidson, 30 F.3d at 966. Similarly, in the present case, although XTL claims they wanted to strike McRae because of his medical background, XTL asked McRae no questions during voir dire related to his medical experience or whether his occupation would lead him to speculate about any medical conclusions presented in the case. In addition, three other jurors had connections to the medical field, yet XTL did not seek to strike any of them.

Upon finding Bush made out a prima facie showing, we next examine step two of the Batson analysis. The second step "does not demand an explanation that is per-suasive, or even plausible." Purkett v. Elem, 514 U.S. 765, 768, remanded to 64 F.3d 1195 (1995). Here we seek the facial validity of the explanation that is given. Id.

XTL asserted to the trial court that the reason for the peremptory strike of McRae was because he was the only remaining juror who had any kind of medical background, stating they did not want any juror who might speculate about whether either decedent had temporarily survived the accident. We find that XTL satisfied the second prong of the Batson analysis. While the asserted reason for the strike may seem unconvincing, especially where XTL admitted that no evidence regarding survival would be presented, implausible reasons may be legitimate, and, therefore,

as long as the reason is facially neutral, "it must be deemed sufficient at this second stage, even if it bears no relation whatsoever to the case to be tried or the person's ability to serve as a juror." Elem v. Purkett, 64 F.3d 1195, 1198 (8th Cir. 1995).

The reviewing court is left to decide whether XTL's explanation for the strike is pretextual. Davidson, 30 F.3d at 965 (citing United States v. Brooks, 2 F.3d 838, 840 (8th Cir. 1993)).

XTL argued medical background could impact the juror's assessment of whether there were any survivors, then admitted during the bench conference that there would be no such evidence presented at trial due to the trial court's ruling on the relevant motion in limine. Pretext can be based "on a finding that the factors used to explain the strike are irrelevant to a person's ability to perform as a juror in the particular case." United States v. Jenkins, 52 F.3d 743, 77 (8th Cir. 1995); United States v. Jones, 245 F.3d 990, 993 (8th Cir. 2001). Whether McRae would speculate about survival was irrelevant to his ability to perform as a juror, as both parties acknowledged there was not going to be any evidence presented regarding whether Smith or Templeton temporarily survived the crash.

A party can also establish an otherwise neutral explanation is pretextual by "showing that the characteristics of a stricken black panel member are shared by white panel members who were not stricken." Davidson, 30 F.3d at 965. The record shows that XTL did not strike three other white jurors who similarly had indirect connections to the medical field. Juror Hubble was married to a pharmacist; juror Taylor was married to a registered nurse; and juror Krueger had a degree in chemical engineering and was retired from a job at a pharmaceutical company. XTL maintains that the sole reason for excluding McRae was due to concerns that his work experience would lead him to speculate or seek information from colleagues about the likelihood that either decedent survived the wreck; however, it is equally conceivable that jurors Taylor or Hubble would seek information from their spouses.

XTL's failure to question McRae about his medical experience, combined with the fact that XTL did not strike jurors Hubble, Taylor, or Krueger, supports an inference of discriminatory purpose. The record then apparent contained adequate evidence for the trial court to have determined that Bush carried the burden of proving purposeful discrimination by XTL.

XTL argues that the trial court failed to consider the third prong of <u>Batson</u> as required by the Supreme Court in <u>Purkett</u>. <u>See</u> <u>Purkett</u>, 514 U.S. at 768. In <u>Purkett</u>, the Supreme Court held that it was error to combine the second and third steps of the <u>Batson</u> analysis by "requiring that the justification tendered at the second step be not just neutral, but also at least minimally persuasive". <u>Id.</u>

A careful examination of the record reveals that after Bush challenged the strike of McRae, XTL stated to the court their race-neutral reason for the strike. Bush responded to this race-neutral reason by indicating to the court that no evidence was going to be offered regarding whether anyone survived the accident; XTL conceded to the trial court that no such evidence was going to be presented. Counsel for both parties then briefly discussed the nature of McRae's medical background. The trial court then ruled XTL would not be allowed to strike McRae.

The trial court did not terminate the inquiry at step two of the <u>Batson</u> analysis; the court heard further from both counsel before making his determination. Although the trial court did not articulate for the record that Bush proved purposeful racial discrimination, we are convinced such a determination was necessarily made.

Under the circumstances of this case, the record adequately discloses a full <u>Batson</u> analysis, and we find that the failure of the trial judge to articulate his analysis of step three on the record did not constitute clear error. We strongly urge, however, as we have in the past, that trial judges make on-the-record rulings articulating the

reasoning underlying a determination on a <u>Batson</u> objection.  <u>See</u> <u>Hopson v. Fredricksen</u>, 961 F.2d 1374, 1378 (8th Cir. 1992).[4]

## Motion for a New Trial

On February 14, 2000, XTL provided USX with its Rule 26 initial disclosures. USX provided its Rule 26 initial disclosures to XTL on February 16, 2000.  Counsel for USX requested XTL's longitude and latitude data on June 7, 2000, during a deposition.  On January 2, 2001, after the close of discovery, XTL finally produced the longitude-latitude information for XTL driver Jacques Trudel that USX had requested months earlier.  XTL did not request reciprocal production.

At no time prior to trial did XTL either formally or informally request that USX provide its longitude-latitude data for the USX truck.  After XTL's closing argument, counsel for XTL asked counsel for USX whether USX possessed longitude-latitude data for the vehicle that was driver by Smith.  Counsel for USX indicated that he did not know, as that data had never been requested before.

---

[4]We note that under circumstances not present here, lack of specificity in a trial court record to demonstrate compliance with the <u>Batson</u> analysis may require remand for further findings.  <u>See</u> <u>Galarza v. Keane</u>, 252 F.3d 630, 640 (2nd Cir. 2001); <u>United States v. Harris</u>, 192 F.3d 580, 589 (6th Cir. 1999); <u>United States v. Hill</u>, 146 F.3d 337, 342-43 (6th Cir. 1998); <u>United States v. Alvarado</u>, 923 F.2d 253, 256 (2nd Cir. 1991).  The value of clearly articulated findings in the <u>Batson</u> analysis has been summarized as follows:

> Indicating these findings on the record has several salutary effects. First, it fosters confidence in the administration of justice without racial animus.  Second, it eases appellate review of a trial court's <u>Batson</u> ruling.  Most importantly, it ensures that the trial court has indeed made the crucial credibility determination that is afforded such great respect on appeal.

<u>United States v. Perez</u>, 35 F.3d 632, 636 (1st Cir. 1994).

The trial in this matter ended on August 22, 2001. On November 7, 2001, while XTL's October 24, 2001, motion[5] to reopen discovery was still pending, USX produced the longitude-latitude data. XTL then filed its motion for a new trial based on the newly disclosed information pursuant to Fed. R. Civ. P. 60(b)(2), asserting it was prejudiced by USX's failure to disclose prior to trial, as required by Rule 26, all relevant information in the matter.[6] The trial court denied the motion.

Rule 60(b) provides for "extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances." United States v. Young, 806 F.2d 805, 806 (8th Cir. 1987). Motions under Rule 60(b)(2) on the ground of newly discovered evidence are viewed with disfavor. Mitchell v. Shalala, 48 F.3d 1039, 1041 (8th Cir. 1995).

"In order to prevail under Rule 60(b)(2), the movant must show that" (1) the evidence was discovered after trial; (2) due diligence was exercised to discover the evidence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence is such that a new trial would probably produce a different result." Schwieger v. Farm Bureau Ins. Co. of Nebraska, 207 F.3d 480, 487 (8th Cir. 2000).

Prior to trial, XTL and its attorneys knew that it was possible for Qualcomm to report vehicle position in terms of the longitude and latitude. As USX points out and the record makes clear, counsel for XTL was made aware that Qualcomm could generate a longitude-latitude report at the deposition of Michael Derry, XTL's safety

---

[5]The trial court ultimately denied this motion.

[6]XTL asserts that in not disclosing the longitude-latitude data, USX failed to make a "complete" disclosure pursuant to Rule 26. This is ironic considering that XTL did not disclose its own longitude-latitude data pursuant to Rule 26; XTL only disclosed this information after a request was made for the data by counsel during a deposition.

director, which took place 14 months prior to trial. XTL cannot claim that they were not aware that such a report was available, or that this information was newly discovered.

In light of the above, XTL cannot claim that it exercised due diligence to discover the evidence, particularly when one considers that XTL failed to request production of the USX longitude-latitude report. Further, although there was testimony that both USX and Qualcomm "dumped" its data approximately every two weeks, XTL should have known that the report may still be available since XTL was able to obtain its own report several months later, thus indicating that Qualcomm, despite the reported "dumping", may have retained a copy of USX's report.

The information provided to XTL by USX described Smith's locations by distances from points in particular towns or cities; the last time and location shown for Smith before his death was October 29, 1999, at 3:33 p.m. at Independence, Missouri. The longitude-latitude data would have provided exact longitude and latitude information with exact points in time for the USX truck at issue.

Although the longitude-latitude data would have provided a specific starting point, since counsel for XTL were able to make the same argument based on the general Independence, Missouri, location, they suffered no prejudice as a result of not having this information. Finally, other than asserting such, XTL has not demonstrated or produced any indication in the record that a new trial would produce a different result. A district court's denial of a motion for a new trial will not be reversed in the absence of a clear abuse of discretion. Harrison v. Purdy Bros. Trucking Co., Inc., 312 F.3d 346, 351 (8th Cir. 2002). We find the trial court did not abuse its discretion in denying XTL's motion under Rule 60(b)(2).

**Canadian Convictions of XTL driver Jacques Trudel**[7]

In 1994, XTL's driver, Jacques Trudel, was tried and convicted in Canada of the crimes of possession of stolen property and conspiracy. These crimes were punishable by imprisonment in excess of one year. In the present case, there is no argument that Trudel was not convicted. XTL is arguing that since Trudel's conviction was absolved under Canadian law, it is not a "conviction", and, therefore, the evidence should be excluded pursuant to Fed. R. Evid. 609 (c)(1), which provides that evidence of a conviction is not admissible if

> the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted, and that person has not been convicted of a subsequent crime which was punishable by death or imprisonment in excess of one year . . .

Fed. R. Evid. 609(c)(1).

XTL focuses its argument on how the conviction is viewed under Canadian law.[8] However, the issue is whether the absolved conviction meets the requirements of Fed. R. Evid. 609(c)(1), and we do not find that it does. In order for Trudel to

---

[7]USX claims that Trudel's testimony regarding his criminal past was admitted without objection by XTL. The record reflects that XTL made a timely objection twice during trial, once during a bench conference prior to Trudel's testimony, and a second time during Trudel's testimony. The issue was adequately presented to the trial court and has been properly preserved for review.

[8]XTL cites Meserve in support of their argument; however, that case is not helpful. In that case, there was no issue of whether the offense constituted a "conviction". United States v. Meserve, 271 F.3d 314, 327 (1st Cir. 2001). The issue was whether Rule 609 precluded the use of the conviction, since assault is not always a misdemeanor punishable by imprisonment for more than one year in Maine. Id.

receive the absolution, he paid $5,000 and complied with his six-month probation term. This does not constitute a finding that he was rehabilitated or innocent; and, therefore, the absolution of the conviction does not meet the requirements of Rule 609(c)(1).

Finally, XTL argues that receiving stolen property is not a crime involving "dishonesty or false statement" as contemplated by Fed. R. Evid. 609(a)(2). "[T]he crime of receiving stolen property suggests a lack of veracity on the part of [the defendant] . . . ." United States v. Field, 625 F.2d 862, 872 (9th Cir. 1980). The trial court found that this was a crime involving dishonesty. Evidentiary rulings are reviewed for an abuse of discretion. Salitros v. Chrysler Corp., 306 F.3d 562, 576 (8th Cir. 2002). The court did not abuse its discretion in allowing USX to use the conviction as a basis for impeachment.

## Reinstated Verdicts

Prior to the introduction of evidence, XTL and Templeton entered into a high-low agreement. Under the terms of that agreement, regardless of the outcome of the trial, Templeton would recover at least $500,000, and XTL's liability exposure was capped at $1,000,000.

USX, Bush, and J.B. Hunt repeatedly requested that the court allow disclosure of this agreement to the jury; however, the trial court did not allow the parties to advise the jury of this high-low agreement.[9]

[9]USX was concerned about the possibility that the jury could award Templeton damages exceeding $1,000,000, but apportion only a nominal percentage of fault to USX, with the remaining large percentage of fault apportioned to the owner of the phantom vehicle. Under joint and several liability which prevails in Missouri, USX would then be responsible to satisfy the amount of the judgment in excess of $1,000,000, even if that amount bore no relation to the jury's apportionment of fault.

The trial court explained in its May 9, 2002, Order, and in its September 27, 2001, Order that upon first learning of the high-low agreement the court was led to believe by counsel for Templeton that the agreement only impacted the amount that Templeton could recover from XTL; no mention was ever made of joint and several liability, and Templeton never indicated to the court that it would attempt to recover the balance of any damage award above and beyond the $1,000,000 from USX, regardless of how the jury apportioned fault. While the jury was deliberating, the trial court learned that Templeton intended to attempt to recover any portion of the verdict awarded to her not covered by the maximum amount in the high-low agreement from USX.

After completion of their deliberations, the jury awarded Templeton $1.5-million and found XTL 97 percent at fault and USX 3 percent at fault. Upon realizing the effect of the high-low agreement in light of the jury's actual verdict, the trial court ordered a new trial. In its order granting a new trial, the court stated that the basis for ordering a new trial was that the court should have disclosed the agreement between XTL and Templeton to the jury after the jury determined XTL was the owner of the phantom vehicle, and that USX was deprived of a fair trial due to the non-disclosure.

Prior to the commencement of the new trial, the Templeton plaintiffs settled their claims against XTL and USX. Immediately thereafter, USX and Bush filed a joint motion to reinstate the previous judgment set aside by the court; the court granted the motion and reinstated the previous judgment. XTL appeals the trial

They further asserted that under Missouri Statute 537.060, the settlement between Templeton and XTL would preclude USX from seeking indemnity from XTL for the amount of the judgment it paid in excess of its share of proportionate fault. See Mo. Rev. Stat. § 537.060.

-13-

court's subsequent reconsideration of its new trial order and its entry of judgment in conformity with the jury's verdict.[10]

A trial court has the discretion to revoke its order for a new trial and reinstate the original judgment. <u>Galimore v. Mo. Pac. R. R. Co.</u>, 635 F.2d 1165, 1171 (5th Cir. 1981). Review is for abuse of that discretion. <u>Id.</u> <u>See also</u> <u>McIsaac v. Didriksen Fishing Corp.</u>, 809 F.2d 129, 135 (1st Cir. 1987).

In denying XTL's renewed motion for a new trial on these grounds, the trial court explained that it was USX, and not XTL, that was prejudiced by the fact that the high-low agreement was not revealed to the jury. The court correctly stated that XTL suffered no conceivable prejudice from this turn of events. The trial court did not abuse its discretion in refusing to grant a new trial on these grounds.

## J.B. Hunt

J.B. Hunt argues that XTL limited its appeal to the judgments finding it liable to USX and Bush, and because XTL failed on appeal to assign specific error to the judgment entered in favor of J.B. Hunt, any such claim of error has been abandoned or waived. The court does not address this question because the decision of this court renders the issue moot.

The judgment of the district court is affirmed in all respects.

---

[10]USX correctly points out that XTL's appellate position on this issue differs from the position they asserted at the trial court level, and that the doctrine of judicial estoppel prohibits a party from taking inconsistent positions in the same or related litigation. <u>See</u> <u>United States v. Transport Admin. Servs.</u>, 260 F.3d 909, 917 (8th Cir. 2001); <u>Hossaini v. W. Mo. Med. Ctr.</u>, 140 F.3d 1140, 1142-43 (8th Cir. 1998).

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.