**Harold Heath HILL, Appellee,**

v.

**BASF WYANDOTTE CORPORATION,**
**Appellant.**

No. 80–1619.

United States Court of Appeals,
Fourth Circuit.

Argued May 6, 1982.

Decided Dec. 15, 1982.

Rehearing Denied March 3, 1983.

in favor of Hill, a farmer who bought Basalin from a retailer and used it with allegedly injurious consequences to his soybean crop. A jury, finding breach of warranty running from BWC as manufacturer to Hill as ultimate purchaser under relevant provisions of the state's version of the Uniform Commercial Code (U.C.C.), awarded Hill substantial direct and consequential damages.

Concluding that BWC was bound by no warranty save that expressed in writing on the cans of herbicide purchased by Hill and that under its terms Hill's remedy for breach was limited to direct damages, we vacate the judgment and remand for a new trial limited to the issues of liability and damages for breach of the express warranty on the herbicide cans.

Charles E. Carpenter, Jr., Columbia, S.C. (R. Davis Howser, Richardson, Plowden, Grier & Howser, Columbia, S.C., on brief), and James M. Brailsford, III, Columbia, S.C. (Robinson, McFadden, Moore, Pope & Stubbs, Columbia, S.C., on brief), for appellant.

Terry A. Finger, Columbia, S.C. (Karl A. Folkens, William P. Donelan, Jr., Donelan & Donelan, Dudley H. Britt, Jr., Columbia, S.C., on brief), for appellee.

Before PHILLIPS and ERVIN, Circuit Judges, and ROBERT G. DOUMAR, United States District Judge, sitting by designation.

JAMES DICKSON PHILLIPS, Circuit Judge:

In this diversity case controlled by South Carolina law BASF Wyandotte Corp. (BWC), manufacturer of Basalin, an agricultural herbicide, appeals from a judgment

## I

In 1977, Hill was an experienced farmer with extensive farming operations in Richland County, South Carolina. Along with other crops he grew a substantial amount of soybeans. In recent years he had used a herbicide called Treflan, produced by a manufacturing rival of BWC's, to control weeds in producing this crop. In late January or early February of 1977 he met with a man named Pennington, who was a sales agent for BWC. They discussed the properties of BWC's herbicide, Basalin, which was then selling at a lower price than Treflan's. In the course of their discussions, in response to questioning by Hill, Pennington told Hill that "if you used Treflan, you [use Basalin] the same way ... the entire same way"; that "it would control the same weeds that Treflan will"; that "it would do the same way as Treflan, but it is cheaper"; "to put it down the same way, you don't have to change a thing, do it the same way."

Relying, according to his later testimony, upon these statements by Pennington, Hill decided to buy and use considerable quantities of Basalin in growing his 1977 soybean crop. BWC did not have a direct retail

outlet in the area, and Hill made his purchases of Basalin from Kerr-McGee Chemical Corporation, a local agricultural chemical retailer. He made four separate purchases, the first on February 14, and the other three during April. In all he bought 365 gallons, all in 5-gallon cans, for a total purchase price of $8,382.35 which he paid in two separate installments.

On each of the cans of Basalin purchased there appeared a label containing a warranty and certain conditions of sale that included an allocation of risk, a disclaimer of any warranties other than the one expressly stated, and a limitation of remedies for breach of that warranty.[1] After reading the label, Hill applied the herbicide to 1,450 acres of soybeans. He applied Treflan to approximately another 200 acres of soybeans. Following planting of this crop in May and June, Hill began in July to notice weed problems—particularly pig weed—in the Basalin fields. No corresponding problem was noted then or later in the Treflan fields. Efforts of various kinds were made to control the weed problem, but none were successful.

In the Basalin-treated fields, Hill had a bad crop, with lower yield than he had had in other years and a poorer quality that required greater-than-ordinary expense in harvesting. Ascribing this result to Basalin's failure to control weeds as warranted, Hill brought this action against BWC alleging breach of warranty and misrepresentation, and seeking $48,257.35 in direct and consequential damages.

BWC defended on several grounds: *inter alia,* that Hill's use of Basalin was not the proximate cause of any crop loss sustained; that BWC's sole warranty was that expressed on the label and that it was not breached; and that, in any event, under terms of the warranty, Hill's remedy was limited to recovery of the purchase price.

The case was first tried to Judge Chapman and a jury. On trial the evidence of causation was substantially conflicting. Hill's evidence indicated a significant difference in the yields on the Basalin-treated and Treflan-treated crops, and included testimony suggesting that Treflan in general was rated by experts as a better product and that other farmers in the area had had similar problems with Basalin during the same crop year. On the other hand, BWC's evidence included, *inter alia,* testimony that the two products were essentially identical in chemical composition and were rated of equal quality by experts; that the 1977 crop year had been a bad one generally in the area, with a drought at the critical time that might well have caused any diminished yield experienced; and that a significant portion of the Basalin-treated crop involved a seed variety more vulnerable to the

---

1. CONDITIONS OF SALE AND WARRANTY
   The Directions for Use of this product reflect the opinion of experts based on field use and tests. The directions are believed to be reliable and should be followed carefully. However, it is impossible to eliminate all risks inherently associated with use of this product. Crop injury, ineffectiveness or other unintended consequences may result because of such factors as weather conditions, presence of other materials, or the manner of use or application all of which are beyond the control of BASF WYANDOTTE CORPORATION ("BWC") or the seller. All such risks shall be assumed by the Buyer.
   "BWC" warrants that this product conforms to the chemical description on the label and is reasonably fit for the purpose referred to in the Directions for Use subject to the inherent risks referred to above. "BWC" MAKES NO OTHER EXPRESS OR IMPLIED WARRANTY OF FITNESS OF MERCHANTABILITY OR ANY OTHER EXPRESS OR IMPLIED WARRANTY. In no case shall "BWC" or the Seller be liable for consequential, special or indirect damages resulting from the use or handling of this product. "BWC" and the Seller offer this product, and the Buyer and user accept it, subject to the foregoing Conditions of Sale and Warranty which may be varied by agreement in writing signed by a duly authorized representative of "BWC". The purchase price of Basalin includes a royalty for a non-transferable license to practice the method of U.S. 3,854,927.
   Read the entire label. Use only according to label instructions. Read "CONDITIONS OF SALE AND WARRANTY" before buying or using. If terms are not acceptable, return product at once, unopened.

drought conditions than was the variety used in Hill's smaller Treflan-treated crop.

Judge Chapman ruled as a matter of law that the only warranties in issue were the express warranties on the Basalin can which, by virtue of the applicable state U.C.C. provision, S.C.Code Ann. § 36–2–318 (Law. Co-op. 1976),[2] extended BWC's warranty beyond the retailer to Hill as a consumer; and that if breach of that warranty was proven, Hill's remedy was limited by its terms to direct damages as measured by the purchase price. On that basis the case was submitted to the jury which was then unable to reach a verdict, resulting in the declaration of a mistrial.

The case was then retried to Judge Anderson and a jury on substantially the same evidence. At the conclusion of the retrial, Judge Anderson, in direct disagreement with Judge Chapman's earlier critical rulings, instructed the jury that it might find BWC liable on the oral warranty of Pennington as well as any express warranty on the cans of Basalin, and that it might award consequential as well as direct damages if it found breach of warranty and damages proximately caused by the breach. This jury returned a general verdict for Hill of $209,725.

**2.** Section 36–2–318 provides:

A seller's warranty whether express or implied extends to any natural person who may be expected to use, consume or be affected by the goods and whose person or property is damaged by breach of the warranty. A seller may not exclude or limit the operation of this section.

BWC concedes on this appeal that this provision has the legal effect stated in text. We accept that it does on that basis and without addressing the question independently.

**3.** On this appeal BWC has contended alternatively that Judge Anderson was without power to "reverse" Judge Chapman's earlier rulings because those rulings constituted the "law of the case."

In view of our disposition of the case, it is not necessary to get into the complexities of that general problem. With the matter raised, however, it bears observing that whether rulings by one district judge become binding as "law of the case" upon subsequent district judges is not a matter of rigid legal rule, but more a matter of proper judicial administration which

Following the denial of various post-trial motions by BWC, this appeal was taken.

## II

■ BWC's contentions on appeal are essentially that Judge Anderson erred in his two rulings by which, in specific disagreement with those earlier made by Judge Chapman, he allowed the jury to treat Pennington's oral representations as an oral express warranty binding on BWC, and to award consequential as well as direct damages for any breach found.[3] We agree that there was error of law in both respects.

## A

■ BWC contends that Pennington's oral representation did not amount to a warranty binding upon BWC for two reasons. First, as a matter of law, that the representation amounted to no more than sales puffing, as Judge Chapman had ruled on the first trial. Second, that in any event, BWC's express disclaimer of any express or implied warranties other than those expressed on the label was binding as a matter of law upon Hill as purchaser.

While we would be disposed to agree that under S.C.Code Ann. § 36–2–313(2) (Law.

can vary with the circumstances. It may sometimes be proper for a district judge to treat earlier rulings as binding, sometimes not. *See Gallimore v. Missouri Pacific R.R.*, 635 F.2d 1165 (5th Cir.1981). Our decisions in *Prack v. Weissinger*, 276 F.2d 446 (4th Cir.1960), and *United States v. Whiting*, 311 F.2d 191 (4th Cir.1962), *cert. denied*, 372 U.S. 935, 83 S.Ct. 882, 9 L.Ed.2d 766 (1963), relied upon by BWC, are not to the contrary. In each case, this court affirmed as proper a district judge's application of an earlier ruling by another judge as "binding" upon him on the facts of the case. But we have not held that the "law of the case" doctrine is so related to the very power of the second judge that we must in review affirm even a legally erroneous ruling because it was compelled as "law of the case." *See Parmelee Transportation Co. v. Keeshin*, 292 F.2d 794, 797 (7th Cir.), *cert. denied*, 368 U.S. 944, 82 S.Ct. 378, 7 L.Ed.2d 340 (1961). That, of course, reveals the true nature of the doctrine as not being jurisdictional.

Co-op.1976) Pennington's representation was simply "a statement purporting to be merely the seller's opinion or commendation of the goods [that did] not create a warranty," we rest decision primarily on the conclusion that, in any event, Hill was bound by the disclaimer on the label of any warranties but those expressly stated there. Though on trial Hill attempted to discount the subjective effect of the label's contents upon him as he read them, he conceded that he did read the label before using any of the Basalin. There is, therefore, no question of either his actual notice of the disclaimer's existence as an express condition of the sale or that he was invited by another provision of the label to repudiate by return of the product if unwilling to accept the sale conditions.

Under controlling provisions of the U.C.C. as enacted in South Carolina, S.C.Ann.Code § 36–2–202 (Law.Co-op.1976) (parol or extrinsic evidence),[4] and of the express conditions of the particular sale, the Pennington oral statements could not, as a matter of law, be allowed to vary the terms of the conditions of sale and warranty on the product label, *see Investors Premium Corp. v. Burroughs Corp.,* 389 F.Supp. 39 (D.S.C. 1974) (construing predecessor statute), which alone controlled the legal relations of the parties to the executed sale.

Hill seeks to avoid the controlling effect of these statutory provisions by characterizing the disclaimer on the product label as a unilateral attempt by a seller following execution of a contract of sale or a consummated sale to disclaim express warranties made in conjunction with the sale or contract. The cases he cites in support of this proposition, *e.g., Klein v. Asgrow Seed Co.,* 246 Cal.App.2d 87, 54 Cal.Rptr. 609 (Cal.Ct.App. 1966), do support it, but they and that proposition are simply inapposite to the facts of this case. They deal with the effect of a post-contract or post-sale attempt unilaterally to avoid, by a later disclaimer, warranties embodied in or arising from an executory contract of sale or a completed sale. That is simply not the situation here in issue.

B

The district court also erred in allowing the jury to award consequential damages in the face of the express limitation of remedies on the label.

S.C.Code Ann. § 36–2–719 (Law.Co-op. 1976) authorizes remedy limitations such as that expressed here on the Basalin label unless those limitations are determined to be unconscionable, or not intended to be exclusive, or to have failed of their essential purpose. *Id.* Judge Anderson, as had Judge Chapman in the original trial, held the limitation in issue not to be unconscionable. Hill does not challenge that ruling on appeal. This leaves only the possibilities that the limitation expressed was not intended to be exclusive, or that the exclusive remedy as limited failed of its essential purpose within the meaning of the statute.

Hill urges that he never agreed that the limitation expressed should make the remedy as limited an exclusive one. He accepted, however, a product with a label proclaiming that damages in *no* case would exceed those contemplated on the label. The label extends to purchaser-users the privilege of returning Basalin cans unopened if the purchaser does not agree to the

---

4. Section 36–2–202 provides:

Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented

(a) by course of dealing or usage of trade (§ 36–1–205) or by course of performance (§ 36–2–208); and

(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

terms and conditions on the label. Hill read the label and chose not to return the product but to use it. He cannot defeat the warrantor's expressed intention to limit remedy by a privately held intention not to accept the limitation while accepting and using the product.

■ Hill's argument that such a limited remedy necessarily "fails of its essential purpose" is equally unavailing. The argument seems to be that because Hill *claims* damages in the amount by which his crop yield was allegedly reduced and cannot *obtain* such damages if the limitation on remedy is enforced, then the remedy "fails of its essential purpose." This would of course turn the provision on its head since it would always prevent imposition of any limitation that might prevent recovery of particular relief sought. The "fail of essential purpose" exception to the general right of sellers to limit liability under the U.C.C. applies most obviously to those situations where the limitation of remedy involves repair or replacement that cannot return the goods to their warranted condition. *See, e.g., Benco Plastics, Inc. v. Westinghouse Electric Corp.,* 387 F.Supp. 772 (E.D.Tenn.1974) (cited by Hill). *See generally* J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 12–10 (2d ed. 1980). This exception does not apply here.

### III

It is not possible to determine from the general verdict whether the jury found liability based solely upon breach of the Pennington oral "warranty" or of both that "warranty" and the express warranty on the label. It is therefore necessary to vacate the judgment in its entirety[5] and remand for a new trial limited to the issues of whether BWC is liable for breach of the express warranty on the label and, if so, the amount of damages to which Hill is entitled for the breach under the limitation of remedies that we have held was validly imposed in the conditions of sale on the label.[6]

*It is so ordered.*

■

---

**5.** The district court submitted both "warranties" to the jury, with instructions that they might award both direct and consequential damages if liability for breach were found. It seems obvious from the amount of the award that it included consequential damages related to breach of the wider oral "warranty." From this it might be assumed that the jury must also necessarily have found breach of the written warranty. But this is not necessarily so in view of the much narrower scope of the latter. Under the circumstances, we think the error of submitting an issue related to breach of the oral warranty must be held to have tainted the verdict in its entirety.

**6.** Without attempting to prejudge this damages issue or to anticipate the proof that may be addressed to it upon remand, we make these general observations for guidance of the court and parties on retrial: (a) The measure and method of ascertaining the damages properly recoverable for any breach of warranty found is controlled by S.C.Code § 36–2–714, subject to the contractual limitation of remedies upheld on this appeal. (b) Specifically, this excludes the recovery of any "incidental or consequential" damages that might otherwise be recoverable under subsection (3) of § 36–2–714. (c) We express no opinion as to whether under subsections (1) and (2) of § 36–2–714 and on the evidence that may be adduced on retrial the appropriate measure of damages would be the purchase price of the herbicide or some other measure. This is to be addressed as an open issue on remand. *See* Official Comment to S.C.Code § 36–2–714 (Law.Co-op.1976); *see generally* J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 10–2 (2d ed. 1980).