**MYLAN LABORATORIES,
INC., Plaintiff,**

v.

**PHARMACEUTICAL BASICS,
INC., et al., Defendants.**

**Civ. A. No. S 90–1096.**

United States District Court
D. Maryland.

Dec. 8, 1992.

W. Stephen Cannon and Joseph H. Gibson, Wunder, Diefenderfer, Ryan, Cannon & Thielen, Washington, DC, Michael C. Silverberg, Morvillo, Abramowitz, Grand, Iason & Silverberg, P.C., New York City, Andrew G. Fusco, Fusco & Newbraugh, Morgantown, WV, Price O. Gielen, Neuberger, Quinn & Gielen, Baltimore, MD, for plaintiffs, Mylan Laboratories, Inc.

Donald J. Mulvihill, Cahill, Gordon & Reindel, Washington, DC, for defendants Pharmaceutical Basics, Inc.

Richard M. Cooper, Richard S. Hoffman, and David Kiernan, Williams & Connolly, Washington, DC, for defendants Par Pharmaceutical, Inc., and Quad Pharmaceuticals, Inc.

Ty Cobb and Janet McDavid, Hogan & Hartson, Washington, DC, for defendants American Therapeutics, Inc.

John Sullivan, Lord, Day & Lord, Barrett Smith, New York City, for defendants Vitarine Pharmaceuticals, Inc.

Peter Zimroth and Kenneth Handal, Arnold & Porter, New York City for defendants American Home Products Corp. and Quantum Pharmics, Ltd.

Hamilton P. Fox, III, Sutherland, Asbill & Brennan, Washington, DC, for defendant Raj Matkari.

Andrew Krulwich and Walter Andrews, Wiley, Rein & Fielding, Washington, DC, for defendant Ashok Patel.

Steve Salky, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, Washington, DC, for defendant Dilip Shah.

Michael P. Bell, Selzer & Roberge, Rockville, MD, for defendant Salvatore J. Pinella.

## MEMORANDUM OPINION

SMALKIN, District Judge.

This case is currently before the Court on multiple defense motions: defendant Pharmaceutical Basics, Inc.'s ("PBI") Motion to Dismiss Count Three of Plaintiff's Third Amended Complaint for Failure to State a Claim or, in the alternative, for Partial Summary Judgment, and its Motion

for Judgment on the Pleadings; defendants American Home Products Corporation's ("AHP") and Quantum Pharmics, Ltd.'s ("Quantum") Motion to Dismiss the Third Amended Complaint for Failure to State a Claim; defendants Par Pharmaceutical, Inc.'s ("Par") and Quad Pharmaceuticals, Inc.'s ("Quad") Motion for Judgment on the Pleadings, as well as their Motion to Join the Motions to Dismiss of PBI, AHP and Quantum; defendant Dilip Shah's Motion for Judgment on the Pleadings and to Join Motions of Other Defendants; defendant Salvatore J. Pinella's Motion to Dismiss the Third Amended Complaint and to Join Motions of Other Defendants; and defendant Raj Matkari's Motion for Judgment on the Pleadings, and Motion to Join the Motions of AHP and Quantum to Dismiss the Third Amended Complaint, as well as his Motion to Join the Motions of Par and Quad for Judgment on the Pleadings. The plaintiff, Mylan Laboratories, Inc. ("Mylan") has responded, and many of the defendants have replied. No oral hearing is necessary. Local Rule 105.6 (D.Md.).

## I. FACTUAL BACKGROUND

The facts of this case were set out in detail in an earlier opinion of the court. *Mylan Laboratories, Inc. v. Akzo, N.V.,* 770 F.Supp. 1053, 1057–58 (D.Md.1991) (Ramsey, J.). Briefly, the plaintiff, Mylan, is a corporation which is in the business of developing, manufacturing, selling and distributing prescription drugs. The defendants include corporations which develop, manufacture, sell and distribute generic drugs (defendants PBI, AHP, Quantum, Par, Quad, Vitarine Pharmaceuticals, Inc. ("Vitarine") and American Therapeutics, Inc. ("ATI")), individuals who, at all relevant times, were employees or officers of these corporate defendants (defendants Raj Matkari, Ashok Patel, Dilip Shah, Raju Vegesna, Mohammed Azeem, Steven F. Colton and Jin–Shung Chang), and individuals who, at all relevant times, were employees of the Food and Drug Administration ("FDA") (Charles Chang, David Brancato, Walter Kletch, Jan Sturm and Salvatore Pinella).

Mylan alleges that the corporate defendants paid illegal gratuities to the FDA defendants, with the knowledge, direction, or participation of the corporate officers or employee defendants, in order to facilitate FDA approval of the corporate defendants' abbreviated new drug applications ("ANDA") for generic drugs. Mylan also alleges that the same defendants impeded FDA approval of Mylan's ANDAs for the same drugs, and that non-public information, obtained from the ANDAs of Mylan and other drug manufacturers, was transmitted to the corporate defendants by the FDA defendants. Mylan further alleges that some corporate defendants made false representations that they had produced a generic equivalent of a particular drug (Maxzide) without infringing Mylan's patent; that corporate defendants submitted false data to the FDA in order to obtain approval for ANDAs to which they were not entitled; and, finally, that corporate defendants unfairly competed with Mylan by use of false and misleading commercial advertising.

Mylan's first complaint in this case was filed on June 8, 1989, in the United States District Court for the District of Columbia. On March 27, 1990, Judge Hogan of that court determined that the case had been improperly filed in the District of Columbia and transferred the case to this Court.

Mylan filed a First Amended Complaint, consisting of 41 counts, with this Court on July 26, 1990. In an opinion dated August 15, 1991, Judge Ramsey dismissed Count 2 of Mylan's complaint as to defendants Matkari, Patel, Shah and Vegesna, as well as defendants AHP, Quantum and J. Chang. Judge Ramsey also dismissed Counts 3 through 40 of the complaint as against all defendants.

On March 9, 1992, Mylan moved to file a Second Amended Complaint. Judge Ramsey, however, denied the motion because of Mylan's failure to comply with Local Rule 103.6.c regarding the highlighting of amendments. Mylan supplied a highlighted copy of its complaint on June 11, 1992, as well as a revised Motion to Amend. In the interim, the case had been transferred

from Judge Ramsey to me. After requiring Mylan to conform its Complaint to Judge Ramsey's ruling dismissing a former defendant from the case, Mylan's Motion to Amend was granted. On July 23, 1992, Mylan filed its Third Amended Complaint, which is the subject of the current gaggle of defense motions.

In the Third Amended Complaint, Mylan has alleged four counts against nineteen defendants. Counts One and Two arise under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Count One is asserted against all of the defendants. Count Two is asserted against defendants PBI, Quad, ATI, Vitarine, AHP, Quantum, Azeem, J. Chang, C. Chang, Brancato, Kletch and Sturm.

Count Three arises under the Lanham Act, 15 U.S.C. § 1125, and is asserted against defendants AHP, Quantum, PBI and Par. Count Four arises under Maryland state law, with jurisdiction of this Court arising under 28 U.S.C. § 1332; it is a claim of unfair business competition and malicious interference with business relations, asserted against all of the defendants.

## II. LEGAL STANDARDS GOVERNING MOTIONS TO DISMISS

A motion to dismiss for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6), should not be granted unless the plaintiff can prove no set of facts which support his claim and which entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In making this determination, the Court should construe the complaint, and the allegations contained therein, favorably to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The Court must not, however, consider conclusions of law or unwarranted deductions of fact. *Mylan*, 770 F.Supp. at 1059. Nor can the Court consider any facts, allegations or assertions made by the plaintiff which are contained in legal memoranda other than the complaint. It is well-founded that a complaint cannot be amended by the briefs in opposition to a motion to dismiss. *Mylan*, 770 F.Supp. at 1068.

## III. THRESHOLD MATTERS

Defendants Matkari, Pinella, Par, and Quad have made various motions to join, pursuant to Fed.R.Civ.P. 12(g). These motions will be *granted*, by an order to be entered separately.

The Court also notes that there have been several changes made by Mylan when preparing the Third Amended Complaint to conform with the removal of the former defendant Akzo N.V. from the case. *See* AHP's and Quantum's Motion to Dismiss, at 6, n. 3.[1] These changes were brought to the Court's attention by the defendants in this case, and not by Mylan, which had a responsibility under Local Rule 103.6.c to highlight *all* changes made to the complaint. Indeed, Mylan simply acknowledges their existence, dismissing them as "minor errors." Mylan Response Memorandum, at 5, n. 3.

Mylan's cavalier attitude to its failure to alert this Court to yet another violation of the local rule against non-highlighted changes to the complaint, especially in the face of this Court's previous ruling, is astounding. Arduous though the task of checking every word of the complaint for additions may be, it was the task of Mylan, and not the defendants, to do so. Mylan's failure to draw the Court's attention to these changes, or to apologize for its actions, while not necessarily sufficient to merit a dismissal of this case for non-compliance with the Court's earlier ruling, or a sanctioning of those attorneys involved in the preparation of this deficient complaint, does no credit to any of those responsible for this present incarnation of Mylan's complaint.

---

1. The Court recognizes, with appreciation, the efforts of the unnamed law clerk or paralegal who was presumably given the unenviable task of comparing the different versions of Mylan's complaint, and who was still alert enough to note these changes.

## IV. DISMISSAL OF THE COMPLAINT FOR VIOLATION OF COURT'S PRIOR ORDER

Defendants AHP, Quantum, and PBI have moved for dismissal of Mylan's complaint for a violation of this Court's prior order. The defendants claim that Mylan's complaint is fundamentally, and fatally, flawed, that it has been from the inception of this litigation, and that Mylan, having been afforded multiple opportunities to produce a viable complaint, has failed to rectify these fundamental flaws; therefore, its complaint should now be dismissed with prejudice.

The substance of the defendants' claim revolves around Counts One, Two, and Four of Mylan's Third Amended Complaint. In Counts One and Two, Mylan asserts that the defendants acted in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), Count One alleging a violation of 18 U.S.C. § 1962(c)[2] and Count Two alleging a violation of § 1962(a)[3]. In Count Four, Mylan reasserts these claims, in the guise of a Maryland common law claim of unfair competition and malicious interference with business relations, against all defendants.

In furtherance of its claim, Mylan asserts that "[t]he racketeering acts committed by each of the defendants ... were related to one another and formed a pattern of racketeering activity in that they were in furtherance of the common goals of profiting illegally at Mylan's expense and were focused upon undermining the integrity of the FDA approval process in order to improperly obtain economic advantage." Mylan Complaint, at ¶ 114. The defendants claim that this language, which is contained within Count One and which is

incorporated by reference into Counts Two and Four, asserts a "global conspiracy" among all of the defendants—a theory that was explicitly rejected by Judge Ramsey in his previous opinion. *Mylan*, 770 F.Supp. at 1068.[4] Thus, claim the defendants, because Mylan is reasserting a previously rejected theory of liability, it is in violation of the Court's previous order, and this complaint should be dismissed in consequence. Furthermore since this Court has already instructed Mylan that no further amendments to the complaint will be allowed, the complaint should be dismissed with prejudice.

Mylan asserts that Judge Ramsey had a chance to analyze the language of these two counts when he ruled on the motions to dismiss the previous complaint. Mylan contends that Judge Ramsey found that the language of these two claims was "sufficient" and that, therefore, it resubmitted the same language, adding additional allegations against the defendants. Thus, it argues, the "law of the case doctrine" counsels against dismissing the complaint. In addition, Mylan has asserted, in motion papers, that it does not intend for the language in these counts to be read as asserting a global conspiracy. Mylan, Response Memorandum, at 8.

### A. *Mylan's Intention that Complaint Not be Read to Assert a Global Conspiracy*

Although Mylan does not use the expression "global conspiracy" in its complaint, it clearly asserts that the racketeering acts of the defendants were related, and that they formed a pattern of racketeering activity. This is, in effect, an assertion that some

---

**2.** The language of this portion of the act is as follows:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

**3.** The pertinent language of this portion of the statute is as follows:

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

**4.** A decision with which this Court is in entire agreement.

form of global pattern of action existed, in which all of the defendants participated, Mylan's protestations to the contrary notwithstanding. Indeed, Mylan's effort to "go the extra mile," Mylan, Response Memorandum at 8, is unavailing and, indeed, inappropriate since, as noted above, the language of the complaint cannot be amended by the briefs and motion papers filed in opposition to a motion to dismiss.[5]

## B. *The Law of the Case Doctrine*

Mylan's contention that this language comes to the Court's consideration, in effect, "pre-approved" by Judge Ramsey is not persuasive. It is true that Judge Ramsey did not dismiss these counts, even though they contained the "common pattern" language which is now at issue. Nor does the Court dispute that fact that Mylan is seeking now, as it did previously, to assert separate claims against each of the defendants. Mylan, Reply Memorandum, at 7–8. The flaw in Mylan's position is its apparent contention that, under the law of the case doctrine, the Court is now bound to accept the language of Counts One, Two, and Four simply because it was not expressly rejected earlier.

The law of the case doctrine is "an amorphous concept." *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983). As the Supreme Court has defined it, the doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Id.* (citations omitted). There is, however, an exception to this rule, which provides for the court to depart from a prior ruling "if convinced that it is clearly erroneous and would work a manifest injustice." *Id.,* 460 U.S. at 619 n. 8, 103 S.Ct. at 1391 n. 8.

The question of whether rulings by one district judge are binding on a subsequent district judge, under the law of the case doctrine, is "not a matter of rigid legal rule, but more a matter of proper judicial administration which can vary with the circumstances. It may sometimes be proper for a district judge to treat earlier rulings as binding, sometimes not." *Hill v. BASF Wyandotte Corp.,* 696 F.2d 287, 290 n. 3 (4th Cir.1982) (citations omitted). Indeed, some courts have held that the law of the case doctrine is "no more than a principle of comity; as such, it should give way, if the needs arise, to the interests of justice and economy when those interests would be flouted by rigid adherence to the rule." *Gallimore v. Missouri Pac. Ry.,* 635 F.2d 1165, 1172 (5th Cir.1981). The application of the doctrine is one "within the sound discretion of a trial judge conducting his court in the interest of furthering the administration of justice." *Id., quoting United States v. Koenig,* 290 F.2d 166, 172 (5th Cir.1961), *aff'd sub nom. DiBella v. United States,* 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962).

Inherent within the law of the case doctrine is the requirement that there have been a ruling on a point of law. In the case before this Court, however, all that Mylan can point to is the failure of Judge Ramsey to dismiss two of the counts at issue here. Judge Ramsey engaged in no discussion of the language at issue, other than to note that, in considering whether Mylan had alleged a pattern of racketeering activity against the defendants, he would not attribute every predicate act to every defendant, "despite Mylan's urging." *Mylan,* 770 F.Supp. at 1077[6]. In this Court's judgment, therefore, the fact that Judge Ramsey did not dismiss these counts

---

5. Mylan asserts that its efforts in this regard were merely an attempt to "clarify any possible lingering doubt" as to the meaning of the language of the complaint. Mylan, Reply Memorandum, at 8, n. 5. In its enthusiasm to clarify its meaning, however, Mylan speaks of its intent as to the meaning of the language in the complaint. Mylan's intent, of course, is irrelevant to the Court's analysis of what the language used by Mylan in the complaint actually means, and the Court is not, and cannot be, influenced in this analysis by a subsequently filed explanation of the meaning behind the language.

6. Judge Ramsey did observe that in Mylan's First Amended Complaint, there was a § 1962(d) claim which alleged a global conspiracy and, therefore, was dismissed, based upon his previous finding that no such global conspiracy existed. *Mylan,* 770 F.Supp. at 1068.

based on his holding that no global conspiracy existed does not constitute a ruling on the issue of whether Mylan has, in fact, alleged a pattern of racketeering activity against all defendants. All that can be read into Judge Ramsey's previous opinion is that the issue was, and therefore is, unresolved.

■ Thus, this Court holds that the law of the case doctrine is inapplicable to the issue in question, and that Mylan has alleged a pattern of racketeering activity against all of the defendants in this case. Moreover, were this Court to have held that Judge Ramsey *had* ruled on the issue, and that therefore the law of the case doctrine was applicable, it would nonetheless hold that Mylan had now made an allegation of a blanket pattern of activity, in violation of Judge Ramsey's previous ruling that there was, in fact, no global conspiracy. It is clear from the language of Mylan's Third Amended Complaint that such an allegation has been made, and thus, had Judge Ramsey found otherwise, this ruling would have been clearly erroneous, in that it would have been inconsistent with Judge Ramsey's holding on the global conspiracy issue. If allowed to stand, such a ruling would work a manifest injustice, in that the defendants would be required to defend against claims which have already been shown to have no factual basis.

C. *Dismissal of the Third Amended Complaint*

■ The defendants ask that Mylan's entire complaint be dismissed, with prejudice, for its violation of the Court's prior order. Certainly such a result, given the Court's conclusion that Mylan has asserted Counts One, Two, and Four of the complaint based on a theory which has previously been rejected by the Court, would be within the sound discretion of the Court. Such a result, however, would be overly harsh and would, perhaps, unduly penalize the client for its attorneys' failure to fully compre-

hend the meaning of the language in which they chose to frame Counts One, Two, and Four, as well as the significance of Judge Ramsey's prior ruling in this case. On the other hand, the Court cannot, and will not, permit yet another amendment, simply in order to allow Mylan one more opportunity to rectify its flawed complaint. So to do would be, in essence, to write the complaint for the plaintiff.

This litigation has languished in procedural limbo for years. As previously noted by this Court in this case, the purpose of federal civil practice is to "secure the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1. For that reason, the parties in this litigation were put on notice that *no* further motions to amend pleadings would be entertained by this Court. Nothing in Counts One, Two, and Four of Mylan's Third Amended Complaint gives this Court any reason to reconsider this position now. Construing the complaint in the light most favorable to Mylan, this Court finds that Mylan can prove no set of facts which support its claim and entitle it to relief as to Counts One, Two and Four.

For these reasons, an Order will be entered separately *dismissing* Counts One, Two, and Four of the Third Amended Complaint, with prejudice, as barred by prior order of Court.

### V. LANHAM ACT

Count three of Mylan's Third Amended Complaint alleges a violation of the Lanham Act, 15 U.S.C. §§ 1117[7] and 1125(a), against defendants AHP, Quantum, PBI, and Par. Mylan alleges that these defendants falsely advertised and promoted certain of their drug products, thus injuring Mylan. In addition, Mylan claims that the conduct of the defendants was so egregious, because of the alleged fraud perpetrated on Mylan, the FDA, and the general public, as well as the endangerment of the

---

7. The pertinent language of this section is as follows:

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled ... to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.

health of those who received the defendants' products as a result of these claims, that the Court should, in the exercise of its discretion, award Mylan treble damages and attorney's fees.

The defendants contend that the Lanham Act counts in Mylan's complaint are time-barred under Maryland's statute of limitations for libel. Furthermore, they contend that, even if the count survives the limitations bar, it should be dismissed because the package inserts which form the basis of this claim are not "advertising," as referred to in the Lanham Act, and also because the language contained within these inserts is not "false and misleading" within the meaning of the Act.

### A. Statute of Limitations

The Lanham Act contains within it no specific statute of limitations. In this situation, "the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *Wilson v. Garcia*, 471 U.S. 261, 267, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985). The state statute should be " 'the most appropriate' or 'the most analogous' state statute of limitations to apply to [the federal statutory law]." *Id.* (citations omitted). There is no authority as to the appropriate Maryland statute of limitations in Lanham Act cases, making this a case of first impression for this Court.

The defendants argue that the most appropriate and most analogous Maryland statute of limitations to apply to the Lanham Act is that for libel. According to the defendants, both libel and the Lanham Act provide a remedy to one who has been injured by false statements. Thus, they contend, the "most obvious" choice is for this Court to apply the one year Maryland statute of limitations for libel, Md.Cts. & Jud.Proc. Code Ann. § 5–105 (1989), rather than the general three year limitations period for other torts, *id.* at § 5–101. As support for this position, the defendants cite the Court to *Bedi Photographics Corp. v. Polaroid Corp.*, No. 76–1107, unpublished op. (E.D.Pa. Aug. 11, 1980).

This is an ingenious argument, and one which, claim the defendants, would, if applied, bar Mylan from asserting its Lanham Act claims, since these were added in July of 1992, thus after one year from the date of the alleged violations. Unfortunately for the defendants, the underlying premise of their argument, that libel and the Lanham Act are closely analogous, is invalid.

Libel is "[a] method of defamation expressed by print, writing, pictures, or signs." Black's Law Dictionary 824 (5th ed. 1979). Defamation is the "[h]olding up of a person to ridicule, scorn or contempt in a respectable and considerable part of the community; ..." *Id.* at 375. Thus it is the act of traducing the individual which is at the heart of libel.

The Lanham Act, on the other hand, is concerned with the act of using a false statement of some kind in commerce. Although the Act does provide for a civil cause of action to one who does business and is likely to be damaged by the false statement, there is no requirement that the false statement be about anyone, or any organization. Indeed, the false statement can refer to a false designation or origin, and thus not be about anyone at all. Implicit within the Lanham Act, however, is the notion that the false statement will induce a customer to buy from the person or business making the false statement, rather than from someone else. The damage suffered by a plaintiff in a Lanham Act lawsuit will, therefore, be loss of business. This situation is more closely analogous to fraud, which is "[a]n intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to part with a legal right." Black's Dictionary at 595.

It is true, as noted by the court in *Construction Technology v. Lockformer Co., Inc.*, 704 F.Supp. 1212 (S.D.N.Y.1989), that the Lanham Act is silent on the issue of *scienter*, which is so much a part of fraud. It is, however, impossible to find a perfect fit when looking for state legislation which is most closely analogous to federal statutes, nor is perfection the test. Although

*scienter* is not a necessary element of a Lanham Act claim, this Court cannot agree with the court in *Lockformer* that intent to mislead the public is "largely irrelevant in determining if consumers likely will be confused as to source." *Lockformer,* 704 F.Supp. at 1220. Clearly the degree to which a business intends to mislead the public will bear on how carefully it undertakes the deception and, therefore, the likelihood of its success.

This Court also notes that a central consideration for the New York court was New York State's six year statute of limitations in fraud cases, as opposed to the one year statute of limitations for libel, and the three year statute of limitations for injury to property. That court determined that the more appropriate statute of limitations was that pertinent to property injury, in the process rejecting the analogy to libel for much the same reason as that stated by this Court. In Maryland, however, there is no separate statute of limitations for fraud. Thus, even were the New York court's rationale to be adopted here, the result would be a three year statute of limitations. It is perhaps for this reason that the defendants chose to cite *Bedi*, an unpublished opinion which has been criticized even in Pennsylvania for its unconvincing analysis, *see Monkelis v. Scientific Systems Services,* 653 F.Supp. 680, 684 (W.D.Pa.1987), rather than *Lockformer*, which raises a valid question about the closeness of the fraud analogy.

■ For the stated reasons, this Court finds that the most appropriate, and most analogous, Maryland statute of limitations is the three year general statute of limitations provided for in § 5–101 of the Annotated Code of Maryland.[8]

### 1. Relation Back

■ The defendants next argue that Mylan's claim against them under the Lanham Act cannot be related back under Fed. R.Civ.P. 15(c).[9] They contend that the Lanham Act claim does not arise out of the same conduct, transaction, or occurrence which was set forth in the original (1989) complaint. AHP and Quantum note that they were not even named in the original complaint, which addressed alleged illegal activity by some, but not all, of the defendants listed in the current complaint. In particular, they note that the issue of Quantum's advertising, and the allegations of consumer confusion, was not part of the original complaint.

The defendants do, however, acknowledge that Mylan's Lanham Act claim is related to its previous claim of fraud on the FDA. In fact, they disparage the substance of the claim as merely an attempt to "bootstrap" this claim into one cognizable under the Lanham Act. Whether or not this is true, it is indisputable that, to the extent that this claim relates to the fraud on the FDA claim, the defendants recognize it as arising from the same conduct, transaction, or occurrence as that claim. That is all that is required to invoke relation back under Fed.R.Civ.P. 15(c). It is of no consequence that the claim is brought under a different statute. "The fact that an amendment changes the legal theory on which the action initially was brought is of no consequence if the factual situation upon which the action depends remains the same and has been brought to defendant's attention by the initial pleading." 6A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure Civil 2d* § 1497 at 94–95 (1990). Thus it is clear that, as to PBI and Par, the two defendants named in Count Three who were also defendants in the original complaint, the Lanham Act claims relate back.

■ The more complex question is whether the allegations against AHP and

---

**8.** In reaching this decision, the Court joins a long line of other federal courts who also have held that the Lanham Act and fraud are analogous for limitations purposes: *Johannsen v. Brown,* 797 F.Supp. 835, 840 (D.Or.1992); *Unlimited Screw Products, Inc. v. Malm,* 781 F.Supp. 1121, 1126 (E.D.Va.1991); *Monkelis,* 653 F.Supp. at 684 (W.D.Pa.1987); *PepsiCo, Inc. v. Dunlop Tire and Rubber Corp.,* 578 F.Supp. 196, 199 (S.D.N.Y.1984); *Fox Chemical Co. v. Amsoil,* 445 F.Supp. 1355, 1357 (D.Minn.1978).

**9.** The Court notes that the language of Rule 15(c) was amended, effective December 1, 1991. The pertinent language for the Court's purposes here, however, was unchanged.

Quantum, the two defendants who were added after the filing of the first complaint, should relate back to the filing of the first complaint. The first complaint in this case was filed on June 8, 1989. AHP and Quantum were added to the complaint by order of Judge Ramsey dated July 26, 1990. The Fourth Circuit has observed that three elements must be satisfied in order for relation back under Rule 15(c) to be accomplished. These elements are: "(1) same transaction or occurrence; (2) the new party had notice of the action prior to the expiration of the statute of limitations; and (3) he knew or should have known that but for a mistake in identity the action would have been brought against him." *Weisgal v. Smith*, 774 F.2d 1277, 1279 (4th Cir. 1985).

■ The first of these elements, the same transaction or occurrence, has, as demonstrated above, been met here. The second element requires more analysis. As noted above, AHP and Quantum were added to the complaint on July 26, 1990. Mylan alleges, against these two defendants, a pattern of misleading advertising which began in December of 1985 and continued until May of 1989.

In order to calculate the expiration of the statute of limitations, it is necessary to determine the time of accrual of the action. Even in a case such as this, where a state statute of limitations is used, it is federal law that determines the accrual of a cause of action. *Hooper v. Sachs*, 618 F.Supp. 963, 979 (D.Md.1985), *aff'd*, 823 F.2d 547 (4th Cir.1987). "Under the federal rule, the time of accrual is that point in time when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* (citations omitted).

In the present case, Mylan alleges that AHP and Quantum made false statements in commercial advertising concerning four separate drugs, a generic version of Max-

zide, as well as Temazepam, Lorazepam and Fenoprofen, at different times. The range of dates for the alleged false advertising of the generic equivalent of Maxzide (Mylan's name for a product which is composed of a combination of triamterene and hydrochlorothiazide) is August, 1988 until May, 1989; for Temazepam, July, 1986 until September, 1987; for Lorazepam, December, 1985 until November, 1987; and for Fenoprofen, November, 1988 until May, 1989. However, it cannot be said with any certainty that Mylan *knew* of the injury which is the basis of the action at that time. Although Mylan must be held to have had knowledge of these advertisements, they cannot be charged with knowledge of the alleged false statements contained within these advertisements until some time after the FDA conducted inspections of Quantum's facilities, during the period of August, 1989 until October, 1989. The FDA published notice that it had become aware of the submission of false data by Quantum as to triamterene and hydrochlorothiazide tablets in June, 1990. Third Amended Complaint at ¶ 100. In November of 1990, the FDA announced that Quantum had agreed to withdraw the ANDAs for forty additional drugs, including lorazepam tablets. Thus, the earliest date at which Mylan could be said to have known about the allegedly false statements of AHP and Quantum (and therefore the date of the accrual of its cause of action under the Lanham Act) was June of 1990.[10]

For the purposes of the second prong of the *Weisgal* test, therefore, the new parties to the action, AHP and Quantum, had notice of the action in June, 1990, the month in which Mylan added the defendants to the complaint. Thus they clearly had notice of the action prior to the expiration of the three year Maryland statute of limitations.[11]

---

**10.** Mylan provides no information concerning its discovery that AHP and Quantum had allegedly made false statements concerning Fenopfren. However, the FDA appears to have begun its revelations of the submission of false data with the June 1990 publication in the Federal Register, and this Court will accept that date for the purposes of calculating the time of accrual of Mylan's cause of action.

**11.** This analysis is not altered by the fact that the Lanham Act claims against all defendants were added to the complaint only in July of 1992. For the purposes of this prong of the *Weisgal* test, it is sufficient for Mylan merely to

It is upon the third prong of the *Weisgal* test which Mylan flounders. It must show that AHP and Quantum knew or should have known that, but for a mistake in identity, the action would have been brought against them. No such showing has been made, or even attempted, by Mylan. Nor do the circumstances of this case indicate that such a showing could be made. Thus this Court finds that there is no relation back of the Lanham Act claims against AHP and Quantum to the filing of the original complaint.

This having been said, however, the relation back argument is somewhat academic. Although the Lanham Act claims against AHP and Quantum fail the *Weisgal* test, and therefore do not relate back to the filing of the original complaint, they *do* arise out of the same conduct, transaction or occurrence alleged against the defendants in the First Amended Complaint, which was filed in June, 1990. Therefore, under the above analysis performed for PBI and Par, the Lanham Act claims relate back to the filing of that complaint, since it was the "original pleading" for these defendants, within the contemplation of Fed. R.Civ.P. 15(c).

Therefore, this Court finds that Mylan's Lanham Act claims against PBI, AHP, Par and Quantum are properly before this Court, and are not time-barred under the appropriate statute of limitations.

B. *November Amendment of the Lanham Act*

In November 1988, Congress amended the language of 15 U.S.C. § 1125 "sharpening the section's focus on false and deceptive advertising." *Alpo Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 963 n. 6 (D.C.Cir.1990).[12] This amendment became effective in November, 1989. 15 U.S.C. § 1051, note. Mylan has assumed that, since the original complaint in this case was filed on June 8, 1989, the pre–1988 language will apply. Mylan, Response Memorandum, at 42, n. 24. As with all else in this case, however, the situation is neither as simple nor as straightforward as the parties assume or the Court might wish.

The issue of the retroactivity of legislative enactments is complex and, at present, in flux. Until recently, courts had applied the law which was in effect at the time they rendered their decisions. *Bradley v. School Bd.*, 416 U.S. 696, 94 S.Ct. 2006, 40

---

show that the defendants were aware of the action prior to the expiration of the relevant statute of limitations. Thus, even were it held that AHP and Quantum were only aware of the Lanham Act claims in July of 1992, the notice would still fall within the three year statute of limitations.

**12.** The pre-amendment language of § 1125(a) is as follows:

Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is

likely to be damaged by the use of any such false description or representation. 15 U.S.C. § 1125 (1982).

By contrast, the language of the 1988 amendment is as follows:

Any person who, on or in connection with any goods or services, or container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false, or misleading description of fact, or false or misleading misrepresentation of fact, which—

(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such an act. 15 U.S.C. § 1125 (1982 & Supp.1992).

L.Ed.2d 476 (1974). The Supreme Court appeared to reverse its position on retroactivity in 1988, holding that: "[r]etroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988). The Supreme Court has chosen not to enlighten the lower courts on the appropriate resolution of what Justice Scalia has described as an "irreconcilable contradiction." *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 841, 110 S.Ct. 1570, 1578, 108 L.Ed.2d 842 (1990) (Scalia, J., concurring). Thus, the lower courts are reduced to divining the current state of the law by looking at such entrails as the current composition of the Court (*see Percell v. International Business Machines, Inc.*, 785 F.Supp. 1229, 1234 n. 5 (E.D.N.C.1992)), and the faint harmony between the lines of cases that some have been able to discern, when they are viewed in the context of "fundamental fairness." *See Jaekel v. Equifax Marketing Decision Systems, Inc.*, 797 F.Supp. 486, 491 (E.D.Va.1992).

■ This Court shares the frustration of other inferior courts forced to choose between two seemingly contradictory Supreme Court lines of authority. The Court also shares in the decision of the majority of these courts that it is the *Georgetown Hospital* rule which most closely represents the current position of the Supreme Court. Thus, in the absence of a specific Congressional indication to the contrary, the appropriate language for the Court to consider is the language of the statute which was in effect at the time of the filing of the complaint. Since the Lanham Act contains no such Congressional indication, this Court concludes that it is the pre–1988 version of the Lanham Act which controls here, as to the defendants named in the original complaint.

As noted above, however, AHP and Quantum were *not* named in the original complaint. They were added to the First Amended Complaint when it was filed in this Court on July 26, 1990, well *after* the date on which the Lanham Act amendment took effect. For these parties, the Court will apply the post–1988 language of the statute, for the reasons stated above.

### C. Substantive Disputes Concerning the Lanham Act claims

Mylan has alleged that four of the defendants, American Home, Quantum, PBI and Par, made use of false and misleading advertisements in promoting their various drug products, thus harming Mylan, in violation of the Lanham Act, 15 U.S.C. §§ 1117 and 1125(a) (1982 & Supp.1992). The advertisements were placed in commercial publications, as well as appended to the drug products themselves in the form of "package inserts" and distributed to wholesalers, physicians and pharmacists.

#### 1. Package Inserts

■ The defendants challenge Mylan's use of the package inserts to substantiate its Lanham Act claims. The defendants contend that package inserts cannot be considered advertising, because they are contained within the packaging of the product and thus cannot be seen or considered by the consumer until after the product has been purchased. Therefore, argue the defendants, there can be no inducement to purchase attributed to the content of the package inserts, and thus they cannot constitute false or misleading advertising.

Mylan responds that the pre–1988 amendment language should control here, and therefore no requirement of "commercial advertising" exists. Rather, the statutory language is concerned only with a misrepresentation which is affixed, applied, annexed, or used in connection with any container for goods. Under this language, argues Mylan, the package inserts are actionable. Furthermore, Mylan contends that, even if the post-amendment language were to apply, the inserts should still be deemed to fall within the Lanham Act. It argues that "it is reasonable to infer" that had the inserts disclosed the fact that bioequivalence was uncertain and that the ANDAs were false, the drugs would have been

returned and no further purchases would have been made. Mylan, Response Memorandum, at 46.

As to AHP and Quantum, the Court will, as noted above, analyze Mylan's claims using the post–1988 amendment. The statute requires that any misrepresentation of the nature, characteristics, qualities or geographic origin of the goods must be made "in commercial advertising or promotion." 15 U.S.C. § 1125(a)(2).

An insert, contained within packaging, and which the consumer cannot see until *after* the purchase has been made, cannot, of course, be called commercial advertising. It is axiomatic that the purpose of commercial advertising is to *induce* the customer to purchase a product. Once the product has been purchased, the need to advertise has ceased. However, Mylan alleges that the package inserts were also contained in the packaging of bottles which were provided as "samples." Mylan, Complaint at ¶ 138. To the extent that the inserts were provided in sample bottles, which are themselves a form of advertising, they must be considered as within the realm of "commercial advertising" as contemplated by the statute. The Court, therefore, cannot say that Mylan can prove no set of facts against AHP and Quantum which support its claim that the package inserts violate the Lanham Act, and will not grant the defendants' Motions to Dismiss based on the package inserts.

The Court will analyze Mylan's claims against PBI and Par under the pre–1988 amendment language of the Lanham Act. Here, the issue is somewhat less complex. The statute requires that the misrepresentations be affixed, applied or annexed or used in connection with any container for goods, with no requirement that commercial advertising be an element. There is no question that the package inserts were affixed to the containers containing the drugs. Therefore, Mylan has alleged sufficient facts to defeat a motion to dismiss, and the defendants' Motions to Dismiss will be denied on this issue.

### 2. Brochures and Advertising Intended for Wholesalers, Physicians and Pharmacists

The defendants contend that the Lanham Act should not apply to any material sent by them to wholesalers, physicians and pharmacists. The rationale for this position is that the Lanham Act is intended to protect consumers from the effects of misrepresentation on the part of the manufacturer. Under the defendants' theory, however, neither wholesalers, physicians nor pharmacists can be considered as "consumers." Rather, they are intermediaries, through which the products flow in the stream of commerce from the manufacturer to the ultimate consumer, who is the patient who purchases the drug.

Mylan counters that neither the pre- nor the post-amendment language of the Act requires that the ultimate consumer be the target of the advertising. It chooses to analyze the situation in terms of the "critical" consumer who is, in this case, either the wholesaler, physician or pharmacist. Mylan's position is that it is these people who make the ultimate determination as to which drug the consumer will take. The ultimate consumer rarely will chose between competing generic drugs, and will simply buy the drug which is dispensed by the pharmacist. Thus, according to Mylan, it is the intermediary who is critical to the purchase of generic drugs, and not the consumer. Therefore the protections of the Lanham Act should extend to these "critical consumers." Mylan, Response Memorandum, at 47–48.

The statute itself does not refer to those to whom it is intended to protect, nor whether "ultimate" or "critical" consumers are necessary for its invocation. Case law indicates that the clear purpose of Congress was to protect the consumer. *Vidal Sassoon, Inc. v. Bristol–Myers Co.*, 661 F.2d 272, 277 (2d Cir.1981). That, however, does not significantly advance the analysis. Clearly, the advertising at issue in this case was directed at non-consumers, and yet the impact of this advertising on the consumer was potentially significant.

In a case relied upon by the defendants, *Hertz Corp. v. Avis, Inc.*, 725 F.Supp. 170 (S.D.N.Y.1989), *vacated*, 732 F.Supp. 26 (1990),[13] the court held that "[a]dvertising that is not misconceived, misunderstood, or that fails to reach the consuming public does not come within the purview of the Lanham Act, which is aimed primarily at consumer protection." *Id.* at 171 (citations omitted). The court cites to two cases in order to support its position, neither of which, however, appears to stand for this proposition.

In *National Association of Pharmaceutical Manufacturers, Inc. v. Ayerst Laboratories, Divisions of/and American Home Products Corp.*, 850 F.2d 904 (2d Cir.1988), the court held that "[t]he truth or falsity of the advertisement usually should be tested by the reactions of the public." *Id.* at 917, *citing American Home Products v. Johnson & Johnson*, 577 F.2d 160, 165 (2d Cir.1978). This case involved a letter which was sent to pharmacists, and so the court's quotation of this *dictum* from an earlier Second Circuit opinion could, if interpreted generously, imply that the advertisements to pharmacists should be viewed within the context of public opinion. Any support that this might lend to the *Hertz* court's position, however, is undermined by reference to the *Johnson & Johnson* opinion. Here the court analyzed an advertising campaign which was *directed at* the general public. When read in this context, the court's opinion that the reactions of the public should determine the effect of the advertising makes perfect sense. It is equally clear, however, that it has no relevance whatsoever when determining the effect of advertising which was specifically *not* targeted at the general public. In particular, *Johnson & Johnson* cannot support the proposition that advertising which does not reach the general public is not actionable under the Lanham Act.

In fact, this is a red-herring issue. Nothing in the language of the statute requires that the ultimate consumer, whoever that might be, suffer the ill effects, if any, of the misleading advertising. The case law, as analyzed above, gives only a false hope to the defendants here. The correct result must be that, under either the pre or post-amendment language of § 1125, the allegation that the advertising language was false or misleading is sufficient to withstand a motion to dismiss, regardless of to whom the advertising was targeted. For this reason, the defendant's motion to dismiss will be denied as to this issue.

### 3. The Substantive Content of the Advertising Language

 The final issue raised by the defendants is that Mylan has failed to allege that the statements made in the package inserts and in the commercial advertisements placed by the defendants were, in fact, false or misleading. Thus, claim the defendants, Mylan has failed to allege a set of facts which support its claim and which entitle it to relief.

Mylan responds that the language, and indeed the presence,[14] of the package inserts implied that the drugs had met with FDA approval, including the fact that true ANDAs had been submitted. Mylan also claims that it is reasonable to infer that the defendants' generic drugs are not bioequivalent to Mylan's innovator drug. Mylan also notes that, given discovery, it might be able to make the allegation that the drugs were not bioequivalent. Finally, Mylan contends that the language of the commercial advertising strongly implies that the AHP and Quantum ANDAs were true and not fraudulent.

The case law indicates that, in order to prevail on a Lanham Act claim, a plaintiff must show that a contested statement is in

---

13. This case was vacated after the parties agreed to a settlement. Therefore, as Mylan points out, it has no direct precedential value. Nor, indeed, would it have any direct precedential effect on this Court even were the opinion to have remained in effect, coming, as it does, from a federal district court in another district. The

case is still relevant, however, for its analysis, and the Court will view it in that light.

14. The package inserts were "in the standard format for FDA-approved drugs." Mylan, Response Memorandum, at 44.

fact false or misleading, not merely that the statement is unsubstantiated. *Procter & Gamble Co. v. Chesebrough–Pond's, Inc.,* 747 F.2d 114, 119 (2d Cir.1984); *Sandoz Pharmaceuticals v. Richardson–Vicks, Inc.,* 902 F.2d 222, 229 (3d Cir.1990). Mylan, in its complaint, specifically asserts that the defendants' claims of bioequivalence are unsubstantiated, but nowhere in the complaint does Mylan allege that the drugs are *not* bioequivalent. Mylan explains this omission by asserting that an affirmative allegation of non-bioequivalence cannot be made because the defendants' records are fraudulent. Mylan, Response Memorandum, at 44. Moreover, Mylan claims that it is "certainly reasonable to infer" a lack of bioequivalence based on the defendants' subsequent actions. *Id.* With discovery, they claim, they *may* be able to make this allegation. With regard to Mylan's claims that the commercial advertising conducted on behalf of these drugs was false, Mylan again points to the "strong inference" that bioequivalence did not exist. Mylan, Response Memorandum, at 45.

A complaint cannot be founded upon inference and what *may* be proved, given discovery, absent some allegation pled in a complaint which supports the claim and entitles the plaintiff to relief. It stands to reason that this allegation must have more substance than mere inference and possibility. Were this to be the standard, the courts would be deluged by lawsuits, alleging that there was a possibility that some wrong had been done, and that this possibility "might" be susceptible to proof, given sufficient discovery. The Court recognizes that the dismissal of a complaint for failure to state a claim is viewed with disfavor. 5A Wright & Miller, § 1357. Nonetheless, such dismissals must be ordered if there is insufficient pleading to support the complaint.

In this case, Mylan simply has failed to allege sufficient facts to support its Lanham Act claim. Its complaint, although artfully worded, does not allege that the defendants' drugs were not bioequivalent, and this must be the crux of the Lanham Act violation. If there is bioequivalence, then there is no violation.[15] If there is no bioequivalence, then there may be a violation. It is the absence of bioequivalence which calls into question the issue of what Mylan alleges the defendants did or did not imply with their statements. Thus the failure to allege non-bioequivalence is fatal to Mylan's claim.

Mylan may complain that it is inappropriate for its claim to be dismissed at this stage, and that discovery should be allowed to proceed, allowing the Court to make a more informed decision during the summary judgment phase of litigation. Such an argument, however, is as flawed as would be that of the personal injury plaintiff who filed a complaint without alleging an essential element of his or her case, such as injury. Such a complaint could not withstand a motion to dismiss, nor can the complaint currently under consideration. This Court cannot allow unwarranted inferences to make out an essential element of a claim. *See* 5A C. Wright and A. Miller *Federal Practice and Procedure: Civil 2d* § 1357 at 317 n. 18 (1990). Although Mylan "may" be able to make the crucial allegation after discovery, that is not enough.

In this regard, practice on a motion to dismiss differs from that on summary judgment, where inference can supply a link in the chain of circumstantial evidence pointing to the existence of an alleged fact supporting a claim. But if that key fact is never alleged in the first place, the insufficiency of the complaint is patent, and the

---

**15.** Mylan points to *American Rockwool, Inc. v. Owens–Corning Fiberglass Corp.,* 640 F.Supp. 1411 (E.D.N.C.1986), as support for the proposition that a Lanham Act violation may be actionable even if it is partially correct. *Id.* at 1440. Indeed, that court held that a statement can be literally true and yet so misleading that it can still be actionable under the Lanham Act. *Id.* citing *McNeilab, Inc. v. American Home Products Corp.,* 501 F.Supp. 517, 524 (S.D.N.Y.1980). Without analyzing the accuracy of this holding, the Court finds that it is irrelevant to the situation presented in this case. If the defendants' drugs are bioequivalent, then there could be nothing misleading about stating, or implying, that fact. This is all that Mylan claims they have done, and therefore no Lanham Act violation would exist.

practice of taking inferences in favor of the party moved against simply has no place.

For the reasons stated above, this Court holds that Mylan has failed to allege any factual support for an essential element of its claim. Accordingly, the defendants' Motion to Dismiss as to Count Three of the Third Amended Complaint will also be *granted* and an Order to that effect will be entered separately.

Furthermore, as noted in the Court's previous Memorandum and Order of July 8, 1992, this case has languished in the litigation process for years. As the Court observed, "[t]he purpose of litigation is to resolve disputes, not to drag them out endlessly." Mylan, *Memorandum and Order*, July 8, 1992, at 2. To that end, this Court held that *no* further motions to amend the pleadings would be entertained. Nothing in this current round of motions has served to change the Court's position. Therefore, the defendants' various Motions to Dismiss Count Three of Mylan's Third Amended Complaint will be granted *with prejudice.* This litigation has gone far enough.

## CONCLUSION

For the reasons stated above, the various defendants' motions to join pursuant to Fed.R.Civ.P. 12(g) will be granted, as will the defendants' various motions to dismiss Counts One, Two, Three, and Four of the Third Amended Complaint. The motions to dismiss will be granted with prejudice.